Carmella **LAMB** and James Randall **Roberts**, Plaintiffs,

v.

Bennie **SALLEE** and Beulah **Sallee**, Defendants.

Civ. A. No. 75–54.

United States District Court, E. D. Kentucky, Covington Division.

July 6, 1976.

Charles J. Brannen, Stephen McMurtry, Covington, Ky., for plaintiffs.

James C. Ware, Ware, Bryson, Nolan, West & Hiltz, Covington, Ky., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SILER, District Judge.

This action was brought under 42 U.S.C. §§ 3601 *et seq.*, 42 U.S.C. §§ 1981, 1982, and the Thirteenth Amendment to the United States Constitution. Trial without a jury was held at Covington, Kentucky, on April 26, 1976. The Court, having considered all the evidence presented and the memoranda of the parties, makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The following facts were found by the Court as facts proven in the trial by a preponderance of the evidence.

1. The plaintiff Carmella Lamb (hereinafter Lamb) is a black citizen of the United States, but appears to be white. The plaintiff James Randall Roberts (hereinafter Roberts) is a white citizen of the United States. They were not married, but lived together.

2. During the dates in question, defendants Bennie and Beulah Sallee were owners of a single-family house known as #8 Stevies Ridge Road (hereinafter "house") located in Erlanger, in the Eastern District of Kentucky. In addition, they owned two other single-family houses and one duplex housing unit that were kept for rent. They also owned the home in which they lived.

3. At the time of the acts complained of, the house had been placed by the defendants on the open market for rental.

4. On August 14, 1975, the defendant, Beulah Sallee, acting as business agent for herself and her husband, offered to rent the house to the plaintiffs for $200.00 per month with no lease and a $100.00 deposit, occupancy to begin on September 1, 1975.

5. Plaintiffs were willing to rent the house on the terms specified by the defendant.

6. Plaintiffs communicated this willingness to Mrs. Sallee on August 14, 1975, at a time when the property was available for rent and Lamb wrote a check in the amount of $100.00 for the deposit which was tendered to and accepted by Mrs. Sallee.

7. Plaintiffs started moving into the leased premises on Saturday, August 23, 1975, and were assisted in moving by Lamb's mother, sister, and brother, all of whom are black citizens of the United States. Unlike Lamb, they appear to be black.

8. On Sunday, August 24, 1975, defendants, having heard complaints from neighbors of the house that blacks were there assisting in the move and having learned from plaintiff that the people who helped them move were members of Lamb's family, refused to allow them to continue moving in.

9. Defendants' actions constituted a refusal to rent the house to plaintiffs on terms which defendants had previously indicated would be otherwise satisfactory, and were based solely upon the fact that Lamb is a member of the Negro race.

10. Plaintiffs removed their possessions from the above house on Monday, August 25, 1975.

11. Mrs. Sallee gave plaintiffs a check for $115.00, refunding their $100.00 rent deposit and reimbursing them for the $15.00 fee required to initiate water service for the house. The water company also refunded the latter fee to plaintiffs.

12. On Monday, August 25, 1975, Lamb was employed as a bookkeeper at the rate of $25.00 per day. She lost wages in the amount of $12.50 for the half-day required to remove plaintiffs' possessions from the house.

13. Each plaintiff was humiliated and suffered emotional and mental anguish as a result of defendants' actions.

14. Defendants' actions were willful and made in bad faith. They knew or should have known that fair housing is the law of the land.

15. Counsel for plaintiffs spent a total of thirty-three hours and fifty-five minutes working on this case. Included in that time is slightly more than five hours in court, including the pre-trial conference. This time is a reasonable figure. Appointed Public Defenders are compensated in this Court at the rate of $30.00 per hour for in-court time and $20.00 per hour for all other time. Those are reasonable fees and are used to set the attorneys' fees in this case.

16. Plaintiffs are not financially able to assume these attorneys' fees. Lamb was earning $6200.00 per year and Roberts earned less than $400.00 during last year, since he spent most of his time as a student. Neither has assets of any appreciable amount.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. § 1343(4) of this matter based on 42 U.S.C. § 1982 and the Thirteenth Amendment to the United States Constitution.

2. A duplex is not a single-family house within the meaning of 42 U.S.C. § 3603(b)(1).

3. This Court does not have subject matter jurisdiction under 42 U.S.C. § 3612, of plaintiffs' cause of action based on the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 *et seq.*, because defendants are excluded from the coverage of the Act by 42 U.S.C. § 3603(b)(1).

4. Roberts, although a Caucasian citizen of the United States, has a cause of action under 42 U.S.C. § 1982.

## DISCUSSION

Several aspects of this case require further discussion. While this Court's jurisdiction was invoked under 42 U.S.C. § 3612, as to plaintiffs' cause of action under the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.*, the defendants own, in addition to the house in which they live, four other houses which they rent. However, one of these is a duplex. Title 42, U.S.C. Section 3603(b)(1), provides in part:

(b) Nothing in section 3604 of this title (other than subsection (c)) shall apply to—

(1) any *single-family* house sold or *rented* by an owner: *Provided,* That such private individual owner does not own more than three such single-family houses at any one time: . . . (Emphasis supplied.)

The Court has found no authority construing this section and counsel for the respective parties have cited none. However, in the Court's opinion, the language of the Act precludes the possibility that a duplex can be considered a "single-family house" within the meaning of the statute. In addition, the language excepting from the Act owners who do not own more than three "such single-family houses" obviously refers to "sold or rented" houses and not to a private owner's personal residence. Therefore, the defendants own only three single-family rental houses and do not come within the Act. Thus, the court is without subject matter jurisdiction under 42 U.S.C. § 3612.

On the other hand, plaintiffs also alleged a cause of action, *inter alia*, under 42 U.S.C. § 1982. As to that claim, they have properly invoked the jurisdiction of this Court under 28 U.S.C. § 1343. *McLaurin v. Brusturis,* 320 F.Supp. 190 (E.D.Wis.1970). For the reasons set out *post* the Court finds plaintiffs have made out a case under 42 U.S.C. § 1982 and the Thirteenth Amendment. *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); *Jones v. Sciacia,* 297 F.Supp. 165 (E.D.Mo.1969), *aff'd,* 422 F.2d 393 (8th Cir. 1970).

The elements of a cause of action under 42 U.S.C. § 1982 were clearly set out in *Bush v. Kaim,* 297 F.Supp. 151, 162 (N.D. Ohio 1969):

In sustaining his burden for proving that there has been a prohibited discrimination under the Act, the plaintiff must show . . . (1) that the owner . . . placed the property on the open market for . . . rental, (2) that the plaintiff was willing to rent . . . the property on the terms specified by the owner, (3) [that] the plaintiff communicated this willingness to the owner at a time when the property was available for . . . rent, (4) that the owner refused to rent . . . the property to the plaintiff on the terms which the owner indicated would otherwise be satisfactory, and (5) that there is no apparent reason for the refusal of the defendant to rent the property to the plaintiff other than the plaintiff's race.

See also *Fred v. Kokinokos,* 347 F.Supp. 942 (E.D.N.Y.1972).

The evidence in this case indicates that the house was placed for rental on the open market by the defendant owners. Although the plaintiffs initially contacted Mrs. Sallee in response to a newspaper advertisement relating to another house on the same street, they were told by Mrs. Sallee that the house they inquired about had already been rented and were shown a second house instead. Defendants have not suggested that the house in question was not available for rental by the general public. Lamb testified that when they viewed the house, it was being worked on. The plaintiffs were willing to rent the house on the terms specified by the owner and they made a timely communication of this fact to the owners.

As to the fourth element in *Bush,* the evidence indicates that defendants did not initially refuse to rent the house to plaintiffs. However, having rented the house to them on terms otherwise satisfactory, they, in effect, revoked or cancelled their agreement while the plaintiffs were still moving in and prior to the date of possession. Vio-

lations of 42 U.S.C. § 1982 cannot be made to turn on the legal niceties of landlord-tenant law and it is quite clear that the statute applies to this type of situation. See *Hall v. Freitas,* 343 F.Supp. 1099 (N.D.Cal.1972).

■ Finally, there is no apparent reason for defendants' action other than Lamb's race. Defendants did not dispute Lamb's testimony that she explained to Mrs. Sallee that she and Roberts were not married but "were living together." In fact, Mrs. Sallee testified that she and Lamb talked Roberts into agreeing to rent the house. Lamb testified that, when she and Roberts brought a lot of possessions into the house on Sunday, August 24, Mrs. Sallee stated, "I hear you had some colored people helping you to move in." Lamb replied, "Yes, they are my family." Whereupon, Mrs. Sallee said, "Oh, we just can't. You can't move in. They'll burn down all my houses." This conversation was substantially confirmed by the testimony of Roberts. Lamb and both defendants testified that when Mr. Sallee was consulted, he stated that he "didn't think it would work."

■ Although the defendants have not raised the issue, the Court is of the opinion that Roberts has a cause of action under 42 U.S.C. § 1982 even though he is a Caucasian citizen of the United States. *Walker v. Pointer,* 304 F.Supp. 56 (N.D.Tex.1969); *cf. Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). See also *Trafficante v. Metropolitan Life Ins. Co.,* 446 F.2d 1158 (9th Cir. 1971), *rev'd on other grounds,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Marshall v. Plumbers & Steamfitters Local Union 60,* 343 F.Supp. 70 (E.D.La.1972); *Gannon v. Action,* 303 F.Supp. 1240 (E.D.Mo.1969), *aff'd in part and rev'd in part,* 450 F.2d 1227 (8th Cir. 1971); *Central Presbyterian Church v. Black Liberation Front,* 303 F.Supp. 894 (E.D.Mo.1969).

Where, as here, discrimination against white persons is "racially motivated" in a derivative sense, many courts have held that they have a cause of action under 42 U.S.C. § 1981. See, *e. g., Faraca v. Clements,* 506 F.2d 956 (5th Cir.), *cert. denied,* 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975). However, where discrimination is directed against a white person because of his own race, there is a cause of action. *McDonald v. Santa Fe Trail Transportation Co.,* —— U.S. ——, 96 S.Ct. 2574, 49 L.Ed. 2d ——, 44 U.S.L.W. 5067 (1976).

Although plaintiffs have alleged a cause of action under 42 U.S.C. § 1981, the Court, in ruling that a cause of action exists under 42 U.S.C. § 1982, does not reach that question. There is little distinction in the interpretation of the two statutes, anyway. See generally *Runyon v. McCrary,* —— U.S. ——, 96 S.Ct. 2586, 49 L.Ed.2d ——, 44 U.S.L.W. 5034 (1976). Once plaintiffs have made out a prima facie case, defendants "may then come forward and rebut the evidence establishing any of these elements, or [they] may show that there were reasons other than the plaintiff's race underlying [their] refusal to rent to the plaintiff." *Bush v. Kaim, supra* at 162. The only evidence along this line offered by defendants is Mrs. Sallee's testimony that she did not tell plaintiffs that they had to move. Both Mr. and Mrs. Sallee admit, however, that the neighbors called their attention to the black people they had seen at the house and that Mr. Sallee told plaintiff "he didn't think it would work." Moreover, Mrs. Sallee admitted that when Lamb said that the black people were her relatives, she said, "Oh, my God."

## DAMAGES

In addition to declaratory and injunctive relief, plaintiffs each seek compensatory damages of $5,000.00, punitive damages of $1,000.00, their costs and reasonable attorneys' fees. It is clear that damages are available to plaintiffs in a cause of action based on 42 U.S.C. § 1982. *Sullivan v. Little Hunting Park, Inc., supra* ; 28 U.S.C. § 1343(4).

In proposed findings of fact and conclusions of law tendered to the Court by plaintiffs' counsel, plaintiffs seek $150.00 each for "time utilized in an unproductive attempt to obtain housing" and $40.00, joint-

ly, for "out-of-pocket" expenses in moving, less a $15.00 set off for their "double recovery" on the water tap-on deposit. There is no evidence in the record to support the former (two of the moving days were on a week-end), and the testimony as to the latter is confusing. The Court will, therefore, not grant those damages.

Lamb seeks $2500.00 as compensation for humiliation and mental and emotional distress caused by this incident. She testified that when Mrs. Sallee expressed a fear that the neighbors would burn the rented house and all her other rental houses, she (Lamb) stated that no one knew that she was black and that she would ask her family not to come over. Lamb also testified that she and Roberts pleaded with and begged Mrs. Sallee for approximately an hour to allow them to stay. This testimony was supported by the testimony of Roberts. In addition, Roberts testified that Lamb was "angry," "upset" and "moody" for sometime after the incident, and that they both suffered humiliation and embarrassment because they had to explain to their friends the reason for their sudden move and had to secure their help in order to move out.

 Compensatory damages for humiliation and emotional and mental anguish are appropriate under 42 U.S.C. § 1982. *Seaton v. Sky Realty Co.,* 491 F.2d 634 (7th Cir. 1974); *Walker v. Fox,* 395 F.Supp. 1303 (S.D.Ohio 1975). The testimony, as well as the inferences from the circumstances, supports such an award in this case. In accordance with the findings of fact, compensatory damages are awarded in the amount of $300.00 for Roberts and $750.00 for Lamb for humiliation and emotional and mental anguish, plus $12.50 for lost wages, less $15.00 as a set-off, for a total of $748.50 for Lamb.

The proposed findings of fact and conclusions of law tendered by plaintiffs suggest that the plaintiffs Lamb and Roberts be awarded $1,000.00 and $100.00, respectively, in punitive damages (*vice* $1,000.00 each demanded in the complaint). Although *Sullivan v. Little Hunting Park, Inc., supra,* dealt with compensatory damages, there is

no doubt that it is also authority for the award of punitive damages in a proper case under Section 1982. *Cf. Marr v. Rife,* 503 F.2d 735 (6th Cir. 1974); *Lee v. Southern Home Sites Corp.,* 429 F.2d 290 (5th Cir. 1970); *Wright v. Kaine Realty,* 352 F.Supp. 222 (N.D.Ill.1972).

In *Marr v. Rife, supra,* dealing with the Fair Housing Act of 1968, the Court's statement of the rule on punitive damages is equally applicable to Section 1982 and is based, largely, on cases decided under the latter Act:

> Such damages as a rule are disfavored in the law and are awarded where willful or wanton conduct can be shown . . . or as a deterrent measure.

*Id.* at 744. Here, there is no doubt that defendants' acts were willful. *Jones v. Alfred H. Mayer Co., supra,* was decided by the United States Supreme Court in 1968, the same year the Fair Housing Act was passed. It is not likely that in the intervening seven years, defendants, who have been acquiring rental property since 1945, were not aware that their acts were constitutionally prohibited.

In any event, this is a case where punitive damages are appropriate as a deterrent measure. Therefore, they will be awarded in the amount of $500.00 for Lamb and $100.00 for Roberts.

### ATTORNEYS' FEES

Plaintiffs' complaint requests an award for reasonable attorneys' fees. Plaintiffs' proposed findings request $1500.00 for attorneys' fees. Plaintiffs' counsel has filed with the Court affidavits itemizing a total of thirty-three hours, fifty-five minutes, spent on this case, including trial time, plus one hundred fifty miles travel for which automobile expenses are requested at ten cents per mile, or $15.00. Defense counsel has not refuted these figures, although the Court gave him the right to do so, if he chose.

Any discussion of award for attorneys' fees must begin with the case of *Alyeska Pipeline Service Co. v. Wilderness Society,*

421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (hereinafter *Alyeska*), which holds that, absent a statute authorizing an award of attorneys' fees, the Court must find they are equitable under a permissible exception to the "American Rule." *Alyeska* specifically found the "private attorney general" theory, upon which many courts have relied upon in awarding such fees in housing discrimination cases, to be incompatible with the "American Rule." However, the two remaining non-statutory exceptions to that Rule, "the bad faith" and "common benefit" theories, were left intact by *Alyeska*. See *Runyon v. McCrary, supra.* In *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973), the Supreme Court said:

> [I]t is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." . . . In this class of cases, the underlying rationale of "fee shifting" is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of "bad faith" on the party of the unsuccessful litigant.

Bad faith may be found in the actions that lead to the law suit or in the conduct of the litigation. *Id.* at 15, 93 S.Ct. 1943. Here there is no indication of bad faith in the conduct of this litigation. Of course, 42 U.S.C. § 1982 contains no provisions for an award of an attorneys' fees, and the Fair Housing Act of 1968, which contains such a provision, 42 U.S.C. § 3612(c), does not apply here.

■ In this jurisdiction, "bad faith" in the context of circumstances leading to the law suit, has been defined as "unreasonable, obdurate obstinancy." *Monroe v. Board of Comm'rs,* 453 F.2d 259, 263 (6th Cir. 1972). *Monroe* indicates that one factor to be considered under this standard is the state of the law as it existed at the time of the acts complained of. As already noted, at the time of the acts complained of, the defendants had the benefit of the United States Supreme Court's decision in *Jones v. Alfred H. Mayer,* for approximately seven years.

Therefore, the Court finds that equity requires that plaintiff be awarded reasonable attorneys' fees. *Traylor v. Safeway Stores, Inc.,* 402 F.Supp. 871 (N.D.Cal.1975).

In the Court's opinion, however, attorneys' fees should not include compensation for counsel's out-of-pocket expenses. Without going into great detail, the Court has considered the criteria set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974); *Steele v. Title Realty Co.,* 478 F.2d 380 (10th Cir. 1973); *Sanborn v. Wagner,* 354 F.Supp. 291 (D.Md.1973). The Court feels that, under the facts and circumstances of this case, an award of attorneys' fees in the amount of $730.00 is reasonable.

■ The awarding of attorneys' fees under 42 U.S.C. § 1982 is not based upon the financial ability of the plaintiffs. However, the Court has found that the plaintiffs are not financially able to employ private counsel, in the event an appellate court decides the Fair Housing Act of 1968 is applicable to this situation.

## OTHER EQUITABLE RELIEF

■ Although in the complaint the plaintiffs asked for other equitable relief in the form of a declaratory judgment and an injunction, directing the defendants, their agents and employees and those acting in concert with them to refrain from renting or otherwise disposing of the house until the defendants first offer it to the plaintiffs, it appears to the Court that this claim is abandoned since the plaintiffs have found other rental property. Therefore, the Court declines to grant such other relief, without prejudice to the plaintiffs to reassert such a claim. A judgment in accordance with this decision will be entered this same date.