**Dorothy SINGLETON et al.,
Plaintiffs-Appellants,**

v.

**Hilda GENDASON and Edward Gendason, Defendants-Appellees.**

**No. 75–1103.**

United States Court of Appeals,
Ninth Circuit.

Nov. 12, 1976.

Laura C. Rothkopf (argued), Palo Alto, Cal., for plaintiffs-appellants.

Dov M. Grunschlag (argued), of Steinhart, Goldberg, Feigenbaum & Ladar, San Francisco, Cal., for defendants-appellees.

Before KOELSCH, HUFSTEDLER, and CHOY, Circuit Judges.

HUFSTEDLER, Circuit Judge:

The appellants appeal from a summary judgment in favor of the appellees, the Gendasons, in a housing discrimination suit brought under Title VIII of the 1968 Civil Rights Act, 42 U.S.C. § 3604 (1973) and under the Civil Rights Act of 1866, 42 U.S.C. § 1982 (1974). The district court held that the single-family exemption, 42 U.S.C. § 3603(b)(1) (1973), removed the appellees' conduct from Title VIII; and, without further comment, that the appellants' Section 1982 claim was similarly barred. Apparently, the lower court concluded that since Title VIII and Section 1982 both deal with housing discrimination, any exemption barring a Title VIII action should also bar a suit brought under Section 1982. We hold that Section 3603(b)(1) does not bar the appellants' Title VIII claim, and we remand both the Title VIII and Section 1982 claims for relief.

The appellants are three black women who allege that the appellees racially discriminated against them in refusing to rent them an unfurnished three-bedroom single-family house in San Francisco in 1974. Appellees were lessees of the house and were seeking a sublessee for it. The owners of the house (the appellees' lessors) are Lola and Selig Eisenberg.[1] The availability of

---

1. The Eisenbergs, both residents of Los Angeles, were named as defendants in the appellants' pleadings. After the district court granted summary judgment in favor of the Gendasons, the district court dismissed the action against the Eisenbergs with prejudice and with the approval of the appellants on December 3, 1974.

the house was advertised in the *San Francisco Chronicle* and at a rental service known as "Rosalie's Rentals and Realty" ["Rosalie's Rentals"]. Rosalie's Rentals is a rental organization that receives notices of available housing from various landlords and compiles a list which it then sells for a fee to persons seeking housing. According to the appellees, the only other contact Rosalie's Rentals has with a landlord is to determine whether an apartment or a house is still available for rent. Rosalie's Rentals receives no commission from a landlord and makes no appointments between landlords and prospective tenants. The appellants allege that they found the appellees' house through the advertisements in the *Chronicle* and at Rosalie's Rentals.

It is axiomatic that summary judgment is proper only when the movant has proved that there is no genuine issue as to any material fact. (*See,* Fed.R.Civ.P. 56(c); *United States v. Dibble* (9th Cir. 1970) 429 F.2d 598; and 6 Moore's Federal Practice ¶ 56.04 (1976).) This is so even if the opposing party produces no affidavits in opposition to the summary judgment motion.[2] (*See, Adickes v. S. H. Kress* (1969) 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (" 'It has always been perilous for the opposing party neither to proffer any countering evidentiary materials nor file a 56(f) affidavit . . . . Yet, the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required.' "); *Island Equipment Land Co. v. Guam Economic Development Authority* (9th Cir. 1973) 474 F.2d 753; and

6 Pt.2 Moore's Federal Practice ¶ 56.23 (1976).)

The appellees fail to satisfy their burden in arguing that Section 3603(b)(1) exempts them from the prohibitions of Title VIII. Section 3603(b)(1) exempts:

" . . . any single-family house . . . rented by an owner: Provided, . . . [t]hat . . . the . . . rental of any such single-family house shall be excepted from the application of this subchapter only if such house is sold or rented (A) without the use in any manner of the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such facilities or services of any person in the business of selling or renting dwellings . . . ."

 Tenants of a dwelling cannot claim the protection of Section 3603(b)(1) because that exemption is only available to owners.[3] The Gendasons, as tenants, claim that despite the express language in the statute their conduct is exempt because they acted as agents of the owners. The record does not support their claim. To be sure, the complaint alleged that the Gendasons were agents of their lessors, but the Gendasons' answer denied that allegation. Furthermore, even if an owner's agent would be deemed an "owner" under the exemption, triable issues of fact as to the nature and scope of the claimed agency are raised by the record which foreclose summary judgment.

 Assuming, *arguendo,* that the Gendasons could avoid that barrier, they have not succeeded in showing that their use of Rosalie's Rentals did not deprive them of

---

2. The only affidavit offered at the summary judgment proceeding was that of Ralph L. Bradford, manager of Rosalie's Rentals, describing the rental operations of Rosalie's Rentals. Mr. Bradford testified on behalf of the appellees.

3. The legislative history of Title VIII indicates that Congress intended that the word "owner" in Section 3603(b)(1) be given its plain meaning. One of Title VIII's most vigorous opponents so concluded in discussing the companion exemption to § 3603(b)(1) even though his

conclusion admitted a wider application of the bill: "Furthermore, the limited exemption relating to four-unit dwellings contained in the pending amendment applies only to owners. It would not protect a person who was himself renting or leasing his home and taking in boarders. A person in this category would still be compelled to meet all the burdensome requirements of the act and throw open his private home to any one who wanted to move in with him." (Remarks of Senator Stennis in 114 Cong.Rec. 3345 (February 19, 1968).)

the protection of the exemption. Section 3603(b)(1) does not exempt the rental of single-family houses from the obligations of Section 3604(a) when the services of a real estate broker or any person in the business of renting dwellings are involved in the rental transaction. The appellees claim that Rosalie's Rentals is not a real estate broker or organization in the business of renting dwellings.

Rosalie's Rentals is not a real estate broker, dealer, or agent, but the services it offers fall within the broad category of services embraced in the language "business of renting dwellings."[4] Congress intended to make fair housing available to persons who have been the victims of discrimination. This purpose is clear from the words of Title VIII: "It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." (42 U.S.C. § 3601 (1973).)[5] To further that purpose, Congress severely restricted the exemption of owners by broadly defining the category of persons the use of whose services would defeat an exemption otherwise available. The single-family dwelling owner can escape the rigors of Section 3604(a) only if he goes his discriminatory way alone. If he seeks the help of others who furnish any rental service for compensation, he forfeits his exemption. Rosalie's Rentals performs such services by selling its lists of rental units.[6]

Giving multiple listing organizations like Rosalie's Rentals special treatment under Section 3603(b)(1) would be contrary to the spirit of Title VIII. Nor does it make any practical sense to distinguish between Rosalie's Rentals and other organizations in the business of renting housing. Both are capable of the kind of racial discrimination that Title VIII was designed to prohibit. A

---

**4.** Section 3603(b)(1) itself enumerates those members of the real estate industry, the use of whose services would not deprive the single-family owner of his exemption. (*E. g.*, "attorneys, escrow agents, abstractors, title companies, and other such professional assistance as necessary to perfect or transfer the title.") Multiple listing services such as Rosalie's Rentals are not included among them.

**5.** *See, Zuch v. Hussey* (E.D.Mich.1975) 394 F.Supp. 1028, 1046 ("The Fair Housing Act of 1968 . . . was designed to provide, within constitutional limit, for fair housing throughout the United States . . . . Congress' intention in passing the Act was to end the unfairness of racial discrimination forever; it should, therefore, be liberally construed."); and *Williams v. Matthews Co.* (8th Cir. 1974) 499 F.2d 819, 826 (". . . [T]he statutes [including Title VIII] prohibit all forms of discrimination, sophisticated as well as simple-minded, and thus disparity of treatment between whites and blacks, burdensome application procedures, and tactics of delay, hindrance, and special treatment must receive short shrift from the courts.")

**6.** The legislative history of § 3603(b)(1) is illuminating. The Senate rejected an amendment which would have permitted a single-family homeowner to discriminate while using the services of a real estate broker so long as he did not instruct the broker to discriminate. In his criticism of the proposed amendment, Senator Percy said: "I am for plugging every loophole in this bill . . . . I am earnestly entreating the Senate once and for all, to mean what we say in this country when we advocate equality of opportunity for all people." (Schwartz, *Statutory History of the United States,* Volume 2, pp. 1692–1716, at p. 1713 (1970).) To permit an owner to discriminate in the rental of his home when he utilizes the services of a multiple listing business, such as Rosalie's Rentals, but not when he uses the services of any other organization in the rental business would be the creation of just such a loophole. Furthermore, Congress drafted Title VII with intent to remove those economic pressures on the real estate industry that force it to discriminate: ". . . Continued exemption of most housing from Federal nondiscrimination requirements offers ammunition to those who attack present requirements on the ground that they unfairly single out certain categories of persons and firms and place them at a competitive disadvantage. Time and again the Committee has been told by builders, real estate brokers, and apartment house owners that their discriminatory actions have been motivated by business reasons, not personal prejudice. A uniform fair housing law, by covering the entire housing market, would enable them to offer housing to all without fear of suffering business loss." (Hearings on S. 1026, S. 1318, S. 1359, S. 1362, S. 1462, H.R. 2516 and H.R. 10805 on the Proposed Civil Rights Act of 1967, Before the Subcommittee on Constitutional Rights of the Senate Comm. on the Judiciary, 90th Cong., 1st Sess. pp. 207–208.)

multiple listing service, like a real estate broker, can participate in racial steering by giving special lists to black customers. The humiliation suffered by black homeseekers is the same, whether at the hands of a real estate agent or a multiple listing organization. Calling Rosalie's Rentals a "library" or a source of housing information does not distinguish it from that part of a real estate broker's business which also provides information about the availability of housing. Nor does the labeling of Rosalie's Rentals as a "finder" improve the attempted distinction since a real estate broker can be similarly characterized.[7] As the district court observed:

". . . [A] client or a member of the public may go to the so-called rental library just as he may go to a real estate broker. He may be supplied with a rental library, with a list of available properties just as he might be supplied such a list from a real estate broker. He takes that list, just as he would a list from a real estate broker and looks at the various properties and decides if he wants any and as in such cases involving real estate brokers, the negotiation may [sic] directly with the landlord, so in this case the negotiations are always with the landlord who makes the determination as to whether to rent or not."[8]

What remains is a naked charge of racial discrimination. The use of Rosalie's Rentals stripped the appellees of any claim to the single-family house exemption notwithstanding their ability to prove that they were otherwise entitled to the exemption as owners. This determination compels reversal. The district court did not consider the appellants' Section 1982 action because the court concluded that it, too, was barred by the single-family house exemption. Since we hold that exemption is not applicable to

the present case, the district court, on remand, will reconsider the existence of any claim for relief that the appellants may state under both Sections 3604 and 1982.

REVERSED AND REMANDED.

---

7. Indeed, for purposes of licensing, California has placed real estate brokers and multiple listing organizations such as Rosalie's Rentals in the same subset: "A real estate broker within the meaning of this part is a person who, for a compensation . . ., solicits or obtains listings of . . . the purchase, sale or exchange of real property." (Cal. Business and Professions Code § 10131(a) (1964).)

8. Our determination that the appellees' use of Rosalie's Rentals destroys their claim to the single-family house exemption is not intended to impute any illegal discriminatory conduct to Rosalie's Rentals.