USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2017 HOGAR AGUA Y VIDA EN EL DESIERTO, INC., ET AL., Plaintiffs, Appellants, v. JORGE SUAREZ-MEDINA, ETC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Cyr and Stahl, Circuit Judges, ______________ and Pieras,* District Judge. ______________ ____________________ Nora Vargas Acosta, with whom Sabana Litigation & Civil Rights __________________ __________________________________ Project, Ruth E. Harlow, William B. Rubenstein and American Civil _______ _______________ ______________________ _______________ Liberties Union Foundation were on brief for appellants. __________________________ David W. Roman, with whom Ramon A. Alfaro was on brief for _______________ _________________ appellee Suarez. Peter J. Porrata for appellee Dolittle. ________________ ____________________ September 28, 1994 ____________________ ____________________ *Of the District of Puerto Rico, sitting by designation. CYR, Circuit Judge. Hogar Agua y Vida en el Desierto, CYR, Circuit Judge. _____________ Inc. ("HAVED"), a nonprofit organization which operates group homes for persons infected with the Human Immunodeficiency Virus ("HIV"), brought a civil action in the United States District Court for the District of Puerto Rico alleging discriminatory conduct by defendants-appellees in violation of the Fair Housing Act, 42 U.S.C. 3601-3617 (1993) ("FHA"). The district court ruled that the principal defendants, Jorge Suarez Medina and Baudilla Albelo Suarez (hereinafter: "Suarez" or "Suarezes"), were exempt from liability under the FHA by virtue of the "pri- vate individual owner" provision which applies to persons who own less than four "single-family houses," see id. 3603(b)(1). For ___ ___ the reasons discussed in this opinion, we vacate the district court judgment and remand for further proceedings. I I BACKGROUND BACKGROUND __________ In September 1992, appellant HAVED entered into an oral agreement with Suarez to rent, with option to buy, two houses located on an undivided lot in the Los Llanos section of Corozal, Puerto Rico. Upon learning that HAVED intended to use the site as a group home for persons infected with HIV, defendants Milton Dolittle and Antonio Padilla organized neighborhood opposition and threatened and coerced Suarez into reneging on the rental- sale agreement. HAVED, along with its directors and a prospec- tive resident of the proposed group home, initiated the present action charging defendants Suarez, Dolittle and Padilla with violations of FHA 3604 and 3617, and Suarez with breach of contract under P.R. Laws Ann. tit. 31, 3371-3589 (1993).1 HAVED demanded declaratory and injunctive relief as well as compensatory and punitive damages. Suarez moved to dismiss the complaint for lack of subject matter jurisdiction, citing FHA 3603(b)(1): (b) Nothing in . . . [section 3604 of this title] (other than subsection (c)) shall apply to ____________________ 1Section 3604 of the FHA provides, in pertinent part: [E]xcept as exempted by sections [3603(b) and 3607], it shall be unlawful --- (a) To refuse to sell or rent after making a bona _____ ______ _ ____ fide offer, or to refuse to negotiate for the ____ _____ sale or rental of, or otherwise make un- __ _________ ____ ___ available or deny, a dwelling to any person _________ __ ____ because of race, color, religion, sex, famil- ial status, or national origin. 42 U.S.C. 3604(a) (emphasis added). The FHA amendments enacted in 1988 extended comparable protection to persons with a "handi- cap," see, e.g., id. 3604(f), including persons infected with ___ ____ ___ HIV. See Stewart B. McKinney Found., Inc. v. Town Plan and ___ ___________________________________ ______________ Zoning Comm'n, 790 F. Supp. 1197, 1209-10 (D. Conn. 1992) (citing _____________ H.R. Rep. No. 100-711, 100th Cong., 2d Sess. 13, reprinted in _____________ 1988 U.S.C.C.A.N. 2173, 2179). Section 3617 makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protect- ed by [section 3603, 3604, 3605, or 3606]. 42 U.S.C. 3617. 3 (1) any single-family house sold or rented by an _____________ _____ owner: [1] Provided, That such private individual owner ________ _______ __________ _____ does not own more than three such single-family ____ _____________ houses at any one time: ______ [2] Provided further, That in the case of the sale ________ _______ ____ of any such single-family house by a private indi- vidual owner not residing in such house at the ___ ________ __ ____ _____ time of such sale or who was not the most recent __ ___ ___ ____ ______ resident of such house prior to such sale, the ________ exemption granted by this subsection shall apply only with respect to one such sale within any twenty-four month period: [3] Provided further, That such bona fide private ________ _______ ____ ____ _______ individual owner does not own any interest in, nor __________ _____ ___ ________ is there owned or reserved on his behalf, under __ ___ ______ any express or voluntary agreement, title to or ___ _______ __ _________ _________ any right to all or a portion of the proceeds from ________ the sale or rental of, more than three such sin- gle-family houses at any one time: [4] Provided further, That after December 31, ________ _______ 1969, the sale or rental of any such single-family house shall be excepted from the application of this title only if such house is sold or rented ____ __ (A) without the use in any manner of the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such facilities or services of any person in the business of selling or renting dwellings . . . and (B) without the publication, posting or mail- ing, after notice, of any advertisement or written notice in violation of [section 3604- (c) of this title] . . . . 42 U.S.C. 3603(b)(1) (emphasis added; clause numbers added; indentation altered from original). 4 A. The Suarez Properties A. The Suarez Properties _____________________ At the time of the September 1992 rental-sale agreement with HAVED, Suarez owned four separate parcels of land on which were located five structures. First, the "Los Llanos Property," _____ the subject of the abortive rental-sale agreement, consists of one undivided lot containing two unattached residences. Suarez holds undisputed title to the entire lot and one residence (House A) where the Suarezes once resided. Their son built the second house on the lot (House B) as a residence for his own family. However, Mr. Suarez, Sr., was robbed while residing in House A, and the Suarezes and their son moved away from Los Llanos. Houses A and B remained unoccupied at the time of the HAVED- Suarez rental-sale agreement. Second, the "Guarico Residence," located in the Guarico ______ section of Corozal, was designed as a two-story house with a separately equipped, single-family apartment on each floor. Suarez held title to the lot and the house. At the time of the rental-sale agreement, the Suarezes resided primarily in the second-floor apartment, and the son and his family resided in the first-floor apartment. Due to his physical impairments, however, Mr. Suarez, Sr., sometimes lived "interchangeably" with his son's family in the first-floor apartment. The district court ruled that the Guarico Residence constituted one single-family house. Third, the "Guarico Rental" is a two-story, single- _____ family structure located near the Guarico Residence but on a 5 separate lot. At the time of the rental-sale agreement, Suarez held title to the house and the lot, and the house was being rented to a single family. The fourth real estate parcel, the "La Aldea Rental," ______ is a single lot in the La Aldea section containing a one-story structure which Suarez purchased in April 1991, and rented to a single family (Apartment 1). Prior to the rental-sale agreement, however, Suarez renovated the basement of the building into a separate apartment (Apartment 2), and it was rented to another tenant. B. The District Court Proceedings B. The District Court Proceedings ______________________________ Following an evidentiary hearing, the district court dismissed the HAVED complaint for lack of "subject matter juris- diction," citing Fed. R. Civ. P. 12(b)(1) and (6). Pursuant to Provisos 1 and 3 of FHA 3603(b)(1), the court ruled that at the time of the rental-sale agreement with HAVED in September 1992, Suarez had a bona fide ownership interest in only three "single- _____ family houses" (hereinafter: "SFH" or "SFHs"): (i) the Guarico Rental, (ii) the La Aldea Rental (Apartment 1), and (iii) the La Aldea Rental (Apartment 2).2 ____________________ 2The district court also found, under Proviso 4 and 42 U.S.C. 3603(c), that Suarez did not qualify as a "person in the business of selling or renting dwellings," id., because he had ___ not participated in more than two real estate transactions between September 1991 and September 1992. Because Suarez must satisfy all four provisos in order to qualify for the 3603(b)- (1) exemption, we need not reach this issue. 6 Thus, the district court explicitly declined to treat three abodes as SFHs. First, the court ruled that the Guarico Residence is not a SFH under FHA 3603(b)(1) because only SFHs that are "sold or rented" can be counted toward the four-SFH threshold. In other words, in the district court's view a defen- dant's current residence is not counted as an SFH under Provisos _______ _________ 1 and 3 unless it is the subject of the sale or rental transac- tion giving rise to the cause of action under the FHA, or it is __ "on the market" at the time of the challenged transaction. See ___ Hogar Agua y Vida en el Desierto, Inc. v. Suarez, 829 F. Supp. ________________________________________ ______ 19, 22 (D.P.R. 1993) (citing Lamb v. Sallee, 417 F. Supp. 282, ____ ______ 285 (E.D. Ky. 1976)). Second, since Suarez, Sr., had been forced to vacate House A at the Los Llanos Property after the robbery, and to acquire the Guarico Residence, the district court conclud- ed that it would be "inequitable" to treat House A as a SFH under either Proviso 1 or 3. Id. at 22-23. Finally, relying on the ___ same equitable grounds noted in relation to House A, the district court ruled that House B on the Los Llanos Property should not be treated as a SFH. The court ruled, in the alternative, that House B should not be treated as a SFH because the Suarezes's son, who constructed House B, was its bona fide owner under ____ ____ Puerto Rico law; whereas the Suarezes simply held an unexercised "right of accession" based on their ownership of the land on which House B is situated. Id. at 23 (citing Castro Anguita v. ___ ______________ 7 Figueroa, 103 P.R. Dec. 847, 850-51, 3 Official Translations ________ ______________________ 1188-89 (1975)).3 II II DISCUSSION DISCUSSION __________ Since the only dispute on appeal concerns the legal sufficiency of undisputed jurisdictional facts, we review the Rule 12(b)(1) dismissal de novo. See Heno v. FDIC, 20 F.3d 1204, __ ____ ___ ____ ____ 1205 (1st Cir. 1994). We conclude, as a matter of law, that the Suarezes's claim to exemption is precluded by the FHA. See FDIC ___ ____ v. Keating, 12 F.3d 314, 316 (1st Cir. 1993) (statutory interpre- _______ tations reviewed de novo). __ ____ We employ traditional tools of statutory interpreta- tion, particularly the presumption that ambiguous language in a remedial statute is entitled to a generous construction consis- tent with its reformative mission. See, e.g., Cia. Petrolera ___ ____ ______________ Caribe, Inc. v. ARCO Caribbean, Inc., 754 F.2d 404, 428-29 (1st ____________ _____________________ Cir. 1985) (noting that this canon of construction represents an "especially reliable and legitimate" indicator of congressional intent); see generally 3 Norman J. Singer, Sutherland on Statuto- ___ _________ ______________________ ry Construction 60.01 (5th ed. 1992) [hereinafter Sutherland]. _______________ __________ ____________________ 3The district court implicitly concluded as well that HAVED's claims against codefendants Dolittle and Padilla under FHA 3617 should be dismissed because the Suarezes are exempt from liability under FHA 3604. See supra note 1. Although ___ _____ this ruling is contested by HAVED, we need not reach it. 8 This presumption has been relied on consistently by the courts in interpreting the omnibus remedial provisions of the Civil Rights Act of 1968, which prominently include the Fair Housing Act itself. See Casa Marie, Inc. v. Superior Court of Puerto Rico, ___ _________________ ______________________________ 988 F.2d 252, 257 n.6 (1st Cir. 1993) (citing Trafficante v. ___________ Metropolitan Life Ins. Co., 409 U.S. 205, 211-12 (1972)); see ___________________________ ___ also City of Edmonds v. Washington State Bldg. Code Council, 18 ____ _______________ ____________________________________ F.3d 802, 804 (9th Cir. 1994). An important corollary for present purposes is that ambiguous exemptions from FHA liability are to be narrowly construed. See, e.g., id.; Elliott v. City of ________ ___ ____ ___ _______ _______ Athens, Georgia, 960 F.2d 975, 978-79 (11th Cir.) cert. denied, _______________ _____ ______ 113 S. Ct. 376 (1992); United States v. Columbus Country Club, _____________ _____________________ 915 F.2d 877, 882-83 (3d Cir. 1990) (collecting cases), cert. _____ denied, 501 U.S. 1205 (1991). ______ From this appellate perspective we consider which Suarez properties were "single-family houses" within the meaning of Provisos 1 and 3 of FHA 3603(b)(1). The parties agree that two properties the Guarico Rental and the La Aldea Rental qualify as "single-family houses" within the meaning of the exemption.4 Thus, given the four-SFH limen established in ____________________ 4Absent appellate briefing, we hazard no view on the cor- rectness of their stipulation. The burden of proving entitlement to an FHA exemption rested with Suarez. See Massaro v. Mainlands ___ _______ _________ Section 1 & 2 Civic Ass'n, 3 F.3d 1472, 1475 (11th Cir. 1993) ___________________________ (FHA); Columbus Country Club, 915 F.2d at 882 (FHA); Singleton v. _____________________ _________ Gendason, 545 F.2d 1224, 1226 (9th Cir. 1976) (FHA); see also 2A ________ ___ ____ Sutherland 47.11, at 165 (general rule of construction). __________ Whatever its legal elements, entitlement to an FHA exemption 9 section 3603(b)(1), the FHA exemption cannot stand if the Suar- ezes were bona fide "owners" of two SFHs in addition to the ___ Guarico Rental and the La Aldea Rental. A. Los Llanos Property, House A A. Los Llanos Property, House A ____________________________ First, HAVED argues that the district court exceeded its authority by fashioning an "equitable" exception which resulted in the exclusion of Los Llanos, House A, from the four- SFH calculus on the ground that the Suarezes had been forced to vacate the Los Llanos area due to neighborhood crime. See In re ___ _____ Shoreline Concrete Co., 831 F.2d 903, 905 (9th Cir. 1987) ________________________ ("Courts of equity are bound to follow express statutory commands to the same extent as are courts of law.") (citing Hedges v. ______ Dixon County, 150 U.S. 182, 192 (1893)). ____________ Although courts have on occasion engrafted equitable exceptions where rigid adherence to literal legislative language clearly would disserve legislative intent, see, e.g., Zipes v. ___ ____ _____ Trans World Airlines, 455 U.S. 385, 398 (1982) (equitable tolling ____________________ of filing deadlines), generally courts are loath "to announce ____________________ turns on highly fact-dependent inquiries (e.g., the structural ____ design or usage of each dwelling), such that Suarez is bound to these stipulations for purposes of the present litigation. Cf. ___ Railway Co. v. Ramsey, 89 U.S. (22 Wall.) 322, 327 (1874) ("Con- ___________ ______ sent of parties cannot give the courts of the United States [subject matter] jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission."). By the same token, no precedential significance should be ascribed to our acceptance of these stipulations. 10 equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." Guidry v. Sheet ___________ ______ _____ Metal Workers Nat'l Pension Fund, 493 U.S. 365, 376 (1990) ___________________________________ (emphasis added). Moreover, "[w]here Congress explicitly enumer- __________ _______ ates certain exceptions to a general prohibition, additional ____ exceptions are not to be implied, in the absence of contrary ___ legislative intent." Andrus v. Glover Constr. Co., 446 U.S. ______ __________________ 608, 616-17 (1980) (emphasis added). Further, exemptions from the requirements of a remedial statute like the FHA are to ________ _______ be construed narrowly to limit exemption eligibility. See ___ Badaracco v. Commissioner, 464 U.S. 386, 398 (1984) (rejecting _________ ____________ taxpayer plea for "nonliteral reading" of tax statute "on grounds of equity to the repentant taxpayer," and noting that, faced with a statute "which must receive a strict construction," "[c]ourts are not authorized to rewrite [the] statute because they might deem its effects susceptible of improvement."); supra pp. 8-9. _____ For the foregoing reasons, we decline to endorse the equitable exception adopted by the district court, especially since Congress elected not to do so when it undertook to narrow FHA liability in 42 U.S.C. 3603(b). Nothing in section 3603- (b), nor in its legislative history, manifests a congressional intent to temper either the inflexible four-SFH formula or the categorical "ownership" standard. Thus, we believe these FHA provisions reflect the sort of "considered congressional policy choice" that elevates the "effectuation of certain broad social 11 policies . . . over the desire to do equity between particular parties." Guidry, 493 U.S. at 376. Guidry cautions against ______ ______ creating equitable exceptions to comprehensive remedial statutes in an effort to protect individual defendants from occasional inequities, even inequities attributable to misfeasance by the plaintiffs. Id. (holding that the district court had no equita- ___ ble power to contravene ERISA's unqualified anti-garnishment ___________ provision by imposing a constructive trust upon pension benefits payable to a former union official who embezzled union funds). The Guidry admonition holds even stronger sway where, as here, ______ defendant-Suarez's misfortunes were in no sense due to HAVED's conduct. The Court recognized in Guidry that any attempt to ______ calibrate the precise point at which an individual defendant's vicissitudes are so "'especially' inequitable" as to outweigh the __________ broad prophylactic policies underlying the congressional decision to protect the plaintiff class would immerse the courts in an inappropriate and "impracticab[le]" task. Id. (emphasis add- ___ ed).5 ____________________ 5The cases Suarez cites in support of the equitable excep- tion fashioned by the district court, see, e.g., FTC v. Security ___ ____ ___ ________ Rare Coin & Bullion Corp., 931 F.2d 1312, 1314 (8th Cir. 1991), __________________________ concerned the equitable remedies a district court may impose after a defendant has been found in violation of a statutory _____ prohibition. For example, if the statute empowers the court to restrain violations, and neither expressly nor "by a necessary and inescapable inference [] restricts the court's jurisdiction in equity," Porter v. Warner Holding Co., 328 U.S. 395, 398 ______ ___________________ (1946), the court could utilize all its traditional equitable powers or even desist from extending any equitable relief to the plaintiff where the equities warrant. See Williams v. Jones, 11 ___ ________ _____ 12 B. The Guarico Residence B. The Guarico Residence _____________________ HAVED next contends that the district court committed reversible error in not treating the Guarico Residence as a SFH under Provisos 1 and 3 of FHA 3603(b)(1). HAVED argues that nothing in FHA 3603(b)(1) excludes "owner-occupied" houses from the term "single-family house." Furthermore, HAVED notes, Proviso 2 explicitly qualifies the term SFH ("any such single- family house by a private individual owner not residing in such ___ ________ __ ____ house at the time of such sale"), a qualification that would be _____ entirely unnecessary if the term "SFH" itself excluded owner- ______ occupied houses. ________ On the other hand, Suarez says that the Guarico Resi- dence is excluded from consideration under Provisos 1 and 3 because the prefatory clause in FHA 3603(b)(1) (exempting "any single-family house sold or rented by the [defendant]" in a ____ __ ______ discriminatory manner) suggests that Congress did not intend that any property of the defendant count toward the four-SFH threshold unless that property itself was up for sale or rent at the time ____ __ ____ ____________________ F.3d 247, 256 (1st Cir. 1993). Nonetheless, the latter rubric provides no basis for extending an FHA exemption by withholding _________ from HAVED all relief against Suarez's alleged discriminatory ___ ______ refusal to sell or rent the Los Llanos Property. Moreover, even if the court were permitted to withhold injunctive relief, Suarez would be answerable for legal damages (actual and punitive) for _____ _______ any FHA violation. See 42 U.S.C. 3613(c). More importantly, ___ however, Suarez could have asserted no cognizable equitable defense in light of the fact that his misfortunes while residing _______ in Los Llanos were in no sense attributable to HAVED. 13 of the allegedly discriminatory transaction.6 Suarez argues that this must be so because the references to "such [SFHs]" in ____ Provisos 1 and 3 can only relate back to the prefatory clause, and incorporate the requirement that only "sold or rented" SFHs are to be included in calculating the four-SFH threshold. Thus, Suarez says, a defendant's residence normally would not be included as a SFH unless it were on the market at the time of the alleged discriminatory sale or rental. Suarez discounts the value of Proviso 2 as a tool for interpreting the prefatory clause in FHA 3603(b)(1), since Proviso 2 creates a considerably "narrower" and altogether independent exemption that allows one discriminatory sale (but not a rental) of an owner- ___ ____ ___ ______ occupied SFH to be excluded within any two-year period. Proviso ________ 1, on the other hand, creates a "broader exemption" for owners who own no more than three SFHs that are either for sale or rent __ ____ by the owner.7 ____________________ 6As with his other concessions, see supra note 4, Suarez ___ _____ stipulates that the Guarico Residence would qualify as a "single- family house" in all respects, but for its status as his current, ___ ___ off-market residence. We take no position respecting the basis for Suarez's stipulation, but confine our consideration to the two issues briefed by the parties. 7Alternatively, Suarez argues that the Guarico Residence is excluded under the so-called "Mrs. Murphy" exemption in FHA 3603(b)(2), which exempts "rooms or units in dwellings contain- ing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if __ the owner actually maintains and occupies one of such living ___ _____ ________ _________ ___ ________ ___ __ ____ ______ quarters as his residence." 42 U.S.C. 3603(b)(2) (emphasis ________ __ ___ _________ added). The "Mrs. Murphy" exemption is totally inapposite, however. It provides an exemption from section 3604 liability. ____ _______ ____ _________ 14 The present dispute prompts two inquiries. The first is whether a defendant's current residence is excluded from the ________ threshold four-SFH calculus under Provisos 1 and 3 simply because it is his primary or current residence, even though all other SFHs owned but not occupied by the defendant are included without ________ regard to whether they were concurrently "on the market." The second inquiry is whether Congress meant to exclude from the threshold four-SFH calculus all SFHs owned by the defendant (including the primary residence) not on the market at the time the defendant for discriminatory reasons refused to sell or rent a different SFH to the plaintiff. We turn to these ques- tions. 1. Exclusion for Residence Qua Residence 1. Exclusion for Residence Qua Residence _____________________________________ As its prefatory clause makes clear, the FHA 3603- (b)(1) exemption assuming its four provisos are satisfied applies to any "single-family house sold or rented by the owner" _______ __ in a discriminatory manner. For section 3603(b)(1) purposes, therefore, the relevant SFHs in this case are Houses A and B, located on the Los Llanos Property Suarez refused to rent or sell to HAVED. Section 3603(b)(1) neither defines the term "SFH," nor ____________________ It does not exclude a structure from the Proviso 1 and 3 analyses ___ _________ under FHA 3603(b)(1). See id. 3604(b) ("nothing in section ___ ___ [3604] . . . shall apply to . . . rooms and units . . . ."). Thus, the "Mrs. Murphy" exemption could have relevance only if, for example, Suarez had refused to sell or rent one unit in the ___ Guarico Residence to HAVED. _______ _________ 15 does its prefatory clause expressly limit the term "SFH" to structures in which the defendant does not reside. Conversely, as Suarez acknowledges, if the Suarezes had refused to rent or sell their Guarico Residence to HAVED, the prefatory clause would _________ ______ not have debarred the Suarezes from a section 3603(b)(1) exemp- tion merely because the property being rented or sold was their residence. The statutory context in which the prefatory clause appears undermines the Suarez contention as well. See Skidgel v. ___ _______ Maine Dep't of Human Servs., 994 F.2d 930, 937 (1st Cir. 1993) ____________________________ (meaning of particular statutory language assessed in light of entire statute). The four FHA 3603(b)(1) provisos do not give rise to four independent exemptions, as Suarez suggests, but represent four cumulative preconditions to the single exemption __________ ______ set out in the prefatory clause. If any of the four provisos is not satisfied, no section 3603(b)(1) exemption is appropriate. Proviso 2 refers specifically to a discrete subset of the "discriminatory" SFH sales focused upon in the section 3603(b)(1) prefatory clause, namely, sales of SFHs in which the defendant is not residing. If the unqualified term "SFH" in the ___ ________ prefatory clause were intended to embrace only SFHs in which the defendant is not residing, no such further qualification would be needed in Proviso 2. See Mosquera-Perez v. INS, 3 F.3d 553, 556 ___ ______________ ___ (1st Cir. 1993) (court should avoid interpretations which render any part of statute meaningless). Thus, if the term "SFH," as 16 used in the prefatory clause, applies to residences and non- ___ residences, the pendent references to "such [SFHs]" in Provisos 1 and 3 also necessarily encompass the Suarezes's Guarico Residence qua residence. ___ Finally, the legislative history discloses no basis for second-guessing the "plain language" of section 3603(b)(1). See ___ Laracuente v. Chase Manhattan Bank, 891 F.2d 17, 23 (1st Cir. __________ _____________________ 1989) ("Absent a clearly expressed legislative intention to the contrary, the plain language of the statute is conclusive."). As initially introduced in Congress, the FHA contained few signifi- cant exemptions from liability, see, e.g., supra note 7 (describ- ___ ____ _____ ing "Mrs. Murphy" exemption), and the breadth of the FHA's coverage caused vigorous Senate opposition. See generally Jean ___ _________ E. Dubofsky, Fair Housing: A Legislative History and a Perspec- ____________________________________________________ tive, 8 Washburn L.J. 149 (1969). Senator Everett M. Dirksen ____ proposed to assuage opposition by exempting sales and rentals of "any single-family house sold or rented by an owner residing in such house at the time of such sale or rental, or who was the most recent resident of such house prior to such sale or rental." See 114 Cong. Rec. 4571 (1968). Yet even the "Dirksen substi- ___ tute," later modified and enacted as Proviso 2, failed to gain enough Senate support. To break the deadlock, Senator Robert C. Byrd proposed the expanded four-part exemption, later codified as present section 3603(b)(1). During floor debate, Senator Byrd offered two illuminating hypotheticals to demonstrate the cover- 17 age which would be provided under his proposal, but not under the Dirksen substitute: A widow owns and lives in a single-family _____ __ dwelling. She also owns a single-family dwelling across the street, the tenant there- in being her daughter. The daughter moves to another State. The widow cannot qualify for exemption under the Dirksen substitute be- cause she neither resides in the house across the street of which she is the owner nor is the "most recent resident" of such dwelling prior to a subsequent sale or rent- al. An individual lives in his own single-family _____ __ dwelling located on a three-quarter-acre lot. He decides to build a second house on the lot. Ten years later misfortune forces him to parcel the lot and sell the house thereon. ____ ___ _____ _______ He does not qualify under the Dirksen substi- tute exemption because he is neither "resid- ing in" the adjacent dwelling nor was he the "most recent resident" thereof. 114 Cong. Rec. 5640 (1968) (emphasis added). Asked why "it was necessary to raise the number of houses owned by one party to three," Senator Byrd referred to _____ these two hypotheticals, and noted that he had "already discussed situations in which there would be at least two [single-family] ___ houses involved." Id. (emphasis added). Significantly, both ___ ______________ ____ hypotheticals assumed that the houses in which the seller cur- _____________ _______ ____ ___ ______ __ _____ ___ ______ ____ rently resided would be counted toward the four-SFH threshold in ______ _______ _____ __ _______ ______ ___ ________ _________ __ Provisos 1 and 3. See Rice v. Rehner, 463 U.S. 713, 728 (1983) ________ _ ___ _ ___ ____ ______ (noting that interpretation of statute by sponsor is "'authori- _______ tative guide to the statute's construction'") (citation omitted); see also Brock v. Pierce County, 476 U.S. 253, 263 (1986) ___ ____ _____ ______ ______ 18 (sponsor's statements credited if consistent with statutory language). Other senators likewise recognized that the "more than three" threshold would include houses in which the seller resided. See 114 Cong. Rec. 5641 (1968) ("I know we have people ___ who have a summer home or a winter home. . . . One could easily have three homes.") (statement of Senator Jordan). Since this _____ legislative history, at the very least, precludes our finding "a clearly expressed legislative intention to the contrary," Laracuente, 891 F.2d at 23, we must conclude that a defendant's __________ residence, qua residence, is not to be excluded under Provisos 1 ___ and 3 of section 3603(b)(1).8 2. Exemption for "Off Market" SFHs 2. Exemption for "Off Market" SFHs _______________________________ ____________________ 8The legislative history contains a reference arguably supportive of the Suarez interpretation of Provisos 1 and 3. Senator Byrd suggested that he chose "three" as the threshold figure under Provisos 1 and 3 to match the "Mrs. Murphy exemp- tion," see supra note 7, which provides an exemption to a resi- ___ _____ dent landlord of multi-family quarters (containing not more than four family quarters) who refuses to rent any family quarters in the building. Senator Byrd noted that "Mrs. Murphy" must live in one of the four family quarters, so as to confine the "protective reach" of the "Mrs. Murphy" exemption "to three units other than _____ ____ the one in which she lives. In my amendment, therefore, I use ___ ___ __ _____ ___ _____ 'three' as the number, in order to have parallel construction." 114 Cong. Rec. 5640. We note two sound reasons for devaluing this statement. First, as noted, see supra p. 19, inconsistent expressions of ___ _____ ____________ sponsor intent are insufficient to override the plain import of the statutory language. Second, Senator Byrd's more generalized statements concerning a rough numerical symmetry in statutory construction were preceded by his detailed recitation of the two ________ fact-specific hypotheticals discussed above. See supra p. 18. ___ _____ 19 Suarez proposes to exclude the Guarico Residence under Provisos 1 and 3 because it was neither for rent nor sale at the time he refused to sell the Los Llanos Property to HAVED. See ___ Lamb v. Sallee, 417 F. Supp. 282, 285 (E.D. Ky. 1976). The ____ ______ theory is that the term "such [SFHs]" in Provisos 1 and 3 unam- ____ biguously relates back to the complete phrase "single-family house sold or rented by an owner" in the section 3603(b)(1) ____ __ ______ prefatory clause. The language of the statute is not dispositive on this issue, and the interpretation proposed by Suarez is at least plausible. Although it is conceivable that Congress's choice of the indeterminate modifier "such" was intended only to require the counting of residences qua residences under Provisos 1 and 3 ___ in direct contrast to the more constricted scope of the term "SFH" under Proviso 2 Provisos 1 and 3 reasonably might be read to impose the additional, distinct requirement that any SFH, regardless whether it is the defendant's "residence," be counted under Provisos 1 and 3 only if it is a "single-family house sold ____ or rented by an owner." Indeed, Congress's choice of words __ ______ __ __ _____ "sold or rented" in the section 3603(b)(1) prefatory clause is a most curious usage. In order for liability to attach under FHA 3604, a defendant need never have consummated the discriminato- ___________ ry rental or sale of the SFH to which the section 3603(b)(1) prefatory clause adverts. Rather, FHA liability attaches as soon as the defendant "refuses to sell or rent after [the plaintiff 20 makes] a bona fide offer," see supra note 1, without regard to ___ _____ whether the SFH is ever "sold" or "rented" to anyone. With these ____ ______ linguistic difficulties in mind, it seems arguable at least, in keeping with the structure and language of the statute, that the term "such," as used in Provisos 1 and 3, imports the same "on the market" qualification necessarily implicit in the section 3603(b)(1) prefatory clause. As noted earlier, however, normally latent ambiguity in a statutory modifier like "such" should be construed in further- ance of the statute's remedial goals. See Cia. Petrolera, 754 ___ ______________ F.2d at 428. ("When Congress uses broad generalized language in a remedial statute, and that language is not contravened by authoritative legislative history, a court should interpret the provision generously so as to effectuate the important congres- sional goals.") Not only does the authoritative legislative history not contravene the HAVED interpretation, see supra ___ _____ Section II.B.1, it contradicts the Suarez contention. Most importantly, neither hypothetical advanced by Senator Byrd assumed or intimated that the seller's residence was "on the market" at the time the discriminatory sale of the second house took place, yet Senator Byrd included both these SFHs under Provisos 1 and 3. Notwithstanding a conceivable vestige of literal ambiguity, therefore, we are persuaded to the view that the Guarico Residence must be included in the four-SFH calculus 21 under section 3603(b)(1) consistent with the FHA's legislative history and its broad remedial design.9 ____________________ 9The only case to address this precise issue, see Lamb v. ___ ____ Sallee, 417 F. Supp. 282 (E.D. Ky. 1976), reached the opposite ______ conclusion, without reference to the legislative history and without analysis. Id. at 285 ("The Court has found no authority ___ construing [section 3603(b)(1)] and counsel for the respective parties have cited none."). 22 III III CONCLUSION CONCLUSION __________ At the time HAVED was denied the opportunity to acquire the Los Llanos Property, allegedly on discriminatory grounds, Suarez held an undisputed ownership interest in "more than three" "single-family houses": the Guarico Rental, the La Aldea Rental, the Los Llanos Property, House A, and the Guarico Residence. Since Suarez cannot satisfy either Proviso 1 or Proviso 3, the alleged discriminatory refusal to proceed with the HAVED rental- sale agreement relating to the Los Llanos Property did not qualify for exemption under FHA 3603(b)(1). The district court judgment is vacated. The case is The district court judgment is vacated. The case is ___ ________ _____ ________ __ _______ ___ ____ __ remanded for further proceedings consistent with this opinion. remanded for further proceedings consistent with this opinion. ________ ___ _______ ___________ __________ ____ ____ _______ Costs to appellant. Costs to appellant. _____ __ _________ 23