**HOGAR AGUA Y VIDA EN EL DESIERTO, et al., Plaintiffs,**

v.

**Jorge SUAREZ, et al., Defendants.**

**Civ. No. 92–2751(PG).**

United States District Court, D. Puerto Rico.

Decided June 30, 1993.

Filed July 1, 1993.

**20**

Nora Vargas, Río Piedras, P.R., for plaintiffs.

Ramón Alfaro, Old San Juan, P.R., Peter J. Porrata, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

The defendants in this case brought under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, have moved for dismissal thereof on jurisdictional grounds. Specifically, they contend that exception (b)(1) to § 3603 applies in the present instance so as to bar plaintiffs from seeking any relief before this forum. For the reasons fully discussed below, the Court holds that it lacks subject matter jurisdiction to entertain the case. As a consequence thus, it must be dismissed.

### (i) The Facts

The allegations in the complaint in essence are as follows.

Plaintiff Hogar Agua y Vida en el Desierto ("HAVED") is a nonprofit organization whose charitable goal is to provide persons infected with the HIV virus and/or with AIDS a place of abode in Corozal, Puerto Rico. Plaintiff, Graciano Pérez, is a resident of Corozal with HIV positive who has been promised permanent dwelling at the proposed HAVED home. The remaining plaintiffs are HAVED's directors.

Defendants Jorge Suárez and Baudilla Albelo Suárez ("Owners") have title to a property in fee simple located in Corozal which they negotiated to rent/sell to HAVED. Defendants Milton Dolittle and Antonio Padilla are residents of Corozal who jointly have taken affirmative action to prevent plaintiffs from executing the abovementioned rental/sales agreement with the Owners. Padilla has at all times acted as a self proclaimed spokesperson for the Corozal community. Dolittle, on the other hand, actively sought the signatures of Corozal residents to oppose the opening of the HAVED home. Dolittle also visited the Owners to inquire about the proposed rental/sale of their property.

On or about November 1992 the Owners informed plaintiffs that they were reconsidering the agreement due to community pressure. On November 14, 1992, at a community meeting, defendant Padilla threatened anyone who advanced the opening of the proposed group home. At the same meeting, the Owners publicly agreed not to honor their agreement with plaintiffs. As a result thus, this litigation ensued.

### (ii) Plaintiffs' Legal Grounds for Relief

■ Plaintiffs seek the relief requested pursuant to § 3604(f)(1) of the FHA which states:

. . . it shall be unlawful—

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[1] of—

(A) that buyer or renter;

---

**1.** Persons infected with the HIV virus and with AIDS are persons with a "handicap" for purposes of this Fair Housing Act prohibition. *See Stewart B. McKinney Foundation, Inc. v. Town Plan and Zoning Commission,* 790 F.Supp. 1197, 1209–10 (D.Conn.1992); *A.F.A.P.S. v. Regulations and Permits Administration,* 740 F.Supp. 95, 103 (D.P.R.1990) (Fusté, J.); *Baxter v. City of Belleville, Illinois,* 720 F.Supp. 720, 729 (S.D.Ill. 1989).

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

This proviso seemingly encompasses the defendants' acts as alleged by plaintiff. The defendants however, point out to § 3603(b)(1)—an exception to § 3604(f)(1). Said proviso states in relevant part:

Nothing in section 3604 of this title ... shall apply to—(1) any single-family house sold or rented by an owner: Provided, That such private individual owner does not own more than three such single family houses at any one time....

The defendants contend that by virtue of this exception, the Court lacks subject-matter jurisdiction over the instant controversy. The plaintiffs in turn contend that § 3603(b)(2) bars the application of § 3603(b)(1) in the Owners' favor. Said proviso states in relevant part:

the sale or rental of any such single-family house shall be excepted from the application of this subchapter only if such house is sold or rented (A) without the use in any manner of the sales or rental services of any real estate broker, agent or salesman, or *of such facilities or services of any person in the business of selling or renting dwellings*[2].... (Emphasis added)

On Monday, June 28, 1993, this Court held a full evidentiary hearing so as to determine whether the § 3603(b)(1) exemption applies to the defendant homeowners, so as to deprive the Court of jurisdiction to entertain this case. The attorneys for both sides came well prepared and fully argued their respective positions. The defendants offered the testimony of defendant Jorge Suárez Medina—the homeowner. The plaintiffs presented no witnesses. The Court afforded both parties ample opportunity to examine Mr. Suárez.[3]

*(iii) Findings of Fact from the Hearing*

At the evidentiary hearing defendant Jorge Suárez Medina testified that he owned the following four properties: 1) the home where he presently lives, 2) one in Barrio Los Llanos in Corozal, 3) one located near his own home, and 4) one in Barrio La Aldea in Corozal. A more thorough description of each property follows.

1) *His present home.* Said structure and the lot wherein it is constructed are described in detail in Deed Number Ninety Eight notarized by Attorney Gil A. Mercado Nieves. *See* Plaintiffs' Exhibit 3. It is located in the Rural Community of Guarico, Palmarejo Ward in the municipality of Corozal. The house is a two story one. Both stories are fully equipped for comfortable living, each having several bedrooms, at least one bathroom, and a kitchen. The two levels are not connected. Generally, the defendant and his wife live upstairs and their son lives downstairs. However, due to Mr. Suárez Medina's gout (which sometimes makes it hard for him to walk to the upstairs part) the family interchangeably uses the lower and upper units.

2) *Barrio Los Llanos.* This is the property HAVED attempted to rent/buy. Said property is described in Deed Number Ninety Nine also notarized by Attorney Mercado Nieves. *See* Plaintiffs' Exhibit 4. When the Owners bought the property there were no dwellings therein. The Owners constructed a home therein where they lived until they were robbed by hoodlums carrying a shotgun. *See also* Deposition of Jorge Suárez at 21–22. They then moved to their present home out of the concern for their safety.

---

**2.** Section 3603(c)(1) defines a person in the business of selling and renting dwellings as one who "has, within the preceding twelve months, participated as principal in *three* or more transactions involving the sale or rental of any dwelling or any interest therein." (Emphasis added).

**3.** Although the witness is completely illiterate, the Court found that he was nonetheless fully competent to testify as to his properties and his business dealings regarding these. While on the stand, the witness fully understood both attorneys questions as well as those posed by the Court. He seemed quite confident as to what he was testifying about. His testimony was also clear and consistent.

The Owners's son also constructed and lived in a dwelling in the same plot of land.[4] After the criminal incident the son also moved out. No one currently resides in either house on a permanent basis.

3) *Property near the defendants' home.* Said property was purchased by the Owners on January 4, 1992. It is described in Deed Number Three notarized by Attorney Mercado Nieves. *See* Plaintiffs' Exhibit 1. A two-story house is located thereat. Up to two months ago the property was rented for $200.00 per month. The current rate is $300.00 per month.

4) *Barrio La Aldea.* Said property was purchased by the Owners on April 12, 1992. It is described in Deed Number Fifty Five notarized by Attorney Mercado Nieves. *See* Plaintiffs' Exhibit 2. The house located therein is divided into two parts. The upper part was previously rented prior to the Owners' purchase of the property and continues to be rented to the same tenant for $200.00 per month. The defendant has never been inside. The basement was refurbished by Mr. Suárez by adding a bathroom and a kitchen. This was done after the Owners purchased the property. It is rented for $150.00 per month.

\* \* \*

The defendants rent all their properties without the aid of a broker. The availability of these has reached perspective renters via word of mouth, not via newspaper advertising.

### (iv) Legal Analysis

Basically the Court's analysis boils down to performing a simple arithmetical task.

Plaintiffs contend that the defendants own seven "dwellings"[5] within the meaning of the here relevant provisions of the FHA. The defendants contend that this is not so.

The Court considers the following three properties to constitute "dwellings": 1) the property near the defendants' home currently rented for $300.00, 2) the upstairs part of the Barrio La Aldea property rented for $200.00, and 3) the basement part of the same rented for $150.00.[6]

\* \* \*

■ Regarding the defendants' current residence, the Court is of the opinion that this structure cannot be counted as a "dwelling" since the defendants reside therein. Section 3603(b)(1) contemplates only those dwellings which are sold or rented. *Accord Lamb v. Sallee,* 417 F.Supp. 282, 285 (E.D.Ky.1976). The fact that the house has two separate individual living parts does not prompt a different conclusion in this particular case. As Mr. Suárez Medina testified, he presently uses both parts interchangeably, depending on how his leg feels.[7] In essence thus, the Owners treat both parts of the house as a single dwelling. "Nomenclature should not be exalted over substance." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 41 (2nd Cir.1982).

\* \* \*

■ Finally, there remains the property located at Barrio Los Llanos which HAVED attempted to purchase. Although a strict reading of the language contained in § 3603(b)(1) seemingly encompasses said property, the Court nevertheless concludes that equitable considerations particular to

---

4. The defendants assisted their son economically in purchasing the materials to build this house. Later, they tried to segregate his surrounding area from the rest of the parcel. However, the Regulations and Permits Administration, commonly referred to as "ARPE" did not allow it.

5. Section 3602(b) defines "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof."

6. A reading of § 3603(b)(2) prompts the Court to conclude that the basement should be considered a "dwelling" for purposes of the statute. Said section states as another § 3604 exemption "rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence." Clearly, the Owners do not occupy any living quarters in this property.

7. As stated earlier at footnote 3, *supra,* the Court finds the witnesses' testimony to be credible.

the facts of the instant case preclude it from being counted as a fourth "dwelling." As Mr. Suárez Medina testified both at the hearing and his deposition, after his family was brutally robbed, he moved out from this property for fear of their safety. He was therefore forced to purchase a new residence to live in. *See* Deposition of Jorge Suárez at page 23.

The Court takes judicial notice of the ever increasing criminal activity on the Island which is now even starting to affect the ever peaceful rural areas. Were it not for the criminal incident in which the Owners were victims, the Owners would never have come under the ambit of the Fair Housing Act since they would not have purchased a new residence.

The defendants already have paid a price for the consequences of criminal activity—having to move from their home. Must they now pay another—be subject to liability under a federal statute which by reasons out of their control now applies to them? This Court believes that equity will not permit such a result. It also believes that the drafters of the FHA, had this particular situation been presented to them, would not have intended that the Owners be subject to its provisions. As the late Oliver Wendell Holmes stated: "The law ... cannot be dealt with as if contained only the axioms and corollaries of a book of mathematics."

\*    \*    \*

■ Regarding the second structure located at the Barrio Los Llanos site, this property also cannot be counted as a "dwelling" as it does not belong to the defendants. As Mr. Suárez testified at the hearing, his son built it and lived therein.

Section 297 of Puerto Rico's Civil Code, 31 L.P.R.A. § 1164 states in relevant part:

The owner of the land which has been built upon in good faith *shall have the right to appropriate as his own* the work, by previously paying to the owner of the work the cost of the materials and labor, or the cost of reproducing the work at the time the owner of the land exercises his right, deducting depreciation, whichever is greater, or to compel the person who constructed to pay the value of the land. (Emphasis added)

From Mr. Suárez's testimony at the hearing it appears that the Owners allowed their son to construct a dwelling on their property and further intended to segregate the plot of land so as to give him the surrounding portion thereof. They even assisted him economically. However ARPE did not permit such segregation. The Commonwealth Supreme Court has held that an owner such as Mr. Suárez may exercise his right of accession [8] pursuant to the above statute. *See Castro Anguita v. Figueroa*, 103 D.P.R. 847, 850–51 (1975). Nonetheless, until the owner exercises his right, the property does not belong to him. In the case at bar thus, it is evident that the defendants did not have ownership of the dwelling constructed by their son.[9]

\*    \*    \*

Lastly, the Court must determine the merit of plaintiffs' contention that Mr. Suárez is in the business of selling or renting so as for the § 3603(b)(1) exception to be inapplicable. As stated earlier in this opinion, to make such a finding Mr. Suárez must have participated as principal in three or more transactions. Out of his three tenants, one of these, the one renting the upstairs part of the Barrio La Aldea property was living there when defendants purchased the property. Thus, he only participated in two rental transactions.[10]

### (v) Conclusion

In view of the previous discussion, the Court concludes that the defendant Owners

---

8. Black's Law Dictionary defines said legal right as "A principle derived from the civil law, by which the owner of property becomes entitled to all which it produces, and to all that is added or united to it, either naturally or artificially", (that is by the labor and skill of another) ...

9. Even had they exercised their right of accession, the previously discussed equitable consideration would preclude this dwelling from being counted as a fourth one.

10. The Court will not count the alleged rental/sale of the Barrio Los Llanos to HAVED due to the previously discussed equitable considerations. Had the criminal incident not taken place, the Owners would still be living at said residence.

**24**

only own three rental/sale houses for purposes of § 3604(f)(1), therefore the statute cannot be applied to them. Since the FHA is inapplicable, this Court does not have subject-matter jurisdiction to entertain the alleged controversy.

WHEREFORE, the complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The FHA claim is hereby **DISMISSED** with prejudice. The pendent state law claims are hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED.**