Andres Maeso SCHROEDER, et al., Plaintiff,

v.

Maria Teresa De BERTOLO, et al., Defendant.

Civ. No. 93–1797 (JP).

United States District Court, D. Puerto Rico.

March 23, 1995.

José F. Quetglas Alvarez, San Juan, PR, for plaintiff.

Rosa M. Nogueras de González, Juan B. Soto Balbas, Jaime E. Morales Morales, San Juan, PR, for defendant.

### OPINION AND ORDER

PIERAS, District Judge.

The Court has before it co-defendants' motions to dismiss, and plaintiffs' motions in opposition to motion to dismiss (docket Nos. 39, 46, 47 and 48). For the reasons set forth below, co-defendants' motions are hereby **DENIED.**

This is an action for monetary damages pursuant to the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3604(f) and § 3617 (1988). During 1981–82, Rosa Amalia Maeso Schroeder purchased a condominium unit in Concordia Gardens Condominium ("Concordia"). Throughout the time Ms. Schroeder lived in Concordia, she suffered from mental illness, until she committed suicide on June 5, 1993. Plaintiffs are Ms. Maeso Schroeder's brothers and sister, suing in their capacity as legal representatives of the estate of their deceased sister, as well as their personal capacity. Defendants are members of the Board of Directors of Concordia Gardens Condominium Association and the handyman who worked at the Condominium.

Plaintiffs allege that defendants initiated groundless claims against decedent for breach of the peace and misappropriation of common property, threatened to file groundless criminal charges against decedent, and entered decedent's dwelling without her consent to search for common property that decedent had allegedly taken from the common areas. Through these actions, plaintiffs allege that defendants intimidated Ms. Maeso Schroeder and intentionally prohibited her from using the common areas at the Concordia Gardens Condominium because of her mental illness. Since decedent's mental illness was a mental impairment which substantially limits one or more of her major life activities, plaintiffs allege that her illness constituted a "handicap" as defined by the FHAA.

Defendants move to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. First, defendants assert that the protections of Fair Housing Amendments Act apply only in the initial sale or rental of a dwelling. Since Ms. Maeso Schroeder had already purchased a condominium unit, defendants assert that the cited statutory provisions are inapplicable to the case at bar. Second, defendants allege that plaintiffs do not have standing to sue for decedent's al-

leged injuries. They allege that rights under Fair Housing Act and Fair Housing Amendments Act are decedent's personal rights which were not inherited by decedent's heirs at the time of her death.

## I. RULE 12(b)(6) STANDARD

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Federal Bank*, 948 F.2d 41 (1st Cir.1991). The court must accept as true the well-pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences therefrom in favor of the plaintiff. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2576, 49 L.Ed.2d 493 (1976); *Correa–Martinez v. Arrillaga-Beléndez*, 903 F.2d 49, 51 (1st Cir. 1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). *But see Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987) (quoting *Snowden v. Hughes*, 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944)).

■ In opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 22 (1st Cir.1991). Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim. *Id.* at 23 (citing *Correa–Martinez*, 903 F.2d at 52; *Dartmouth Review*, 889 F.2d at 16; *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957)) ("No amount of interpretive liberality can save chestnuts so poorly protected from the hot fire of dismissal."). Plaintiff must set forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

## II. FAIR HOUSING ACT AND FAIR HOUSING AMENDMENTS ACT

Plaintiffs allege that defendants' actions violate Section 3604(f) of the Fair Housing Amendments Act, which prohibits discriminatory housing practices based on an individual's handicap, and Section 3617 of the FHAA, which prohibits a third party from interfering with an individual's exercise of her right to be free from discriminatory housing practices.

"The starting point in every case involving construction of a statute is the language itself," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)). First, Section 3604(f)(1) makes it unlawful "[t]o discriminate in the sale or rental, **or to otherwise make unavailable or to deny,** a dwelling to any buyer or renter because of a handicap of ... that buyer or renter; (emphasis added)." Further, Section 3604(f)(2), makes it unlawful, "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, **or in the provision of services or facilities in connection with such dwelling,** because of a handicap of ... that person" (emphasis added).

■ Defendants argue that the cited provisions prevent discrimination only in the sale or rental of housing accommodations. Since Ms. Maeso Schroeder was the owner of her condominium unit, they argue, she had already exercised her right to purchase a dwelling. Thus, any discriminatory action which they may have taken against her is beyond the scope of the protections of the FHAA.

■ The language of the statute does not lend itself to such a narrow interpretation. The phrase "to otherwise make unavailable or deny" sweeps activities which go beyond the initial sale or rental transaction under the scope of the section. Once Ms. Maeso Schroeder became the owner of the unit, her

housing rights did not terminate. She had the continuing right to quiet enjoyment and use of her condominium unit and common areas in the building. Her right to obtain a dwelling free from discriminatory conduct of others encompassed the right to maintain that dwelling.

■■■ Defendants further argue that the prohibitions of the FHAA only apply to housing providers. Since plaintiff already owned her condominium unit, the condominium board of directors were not providing her with housing. To support this contention, defendants cite to Section 3603, which provides an exemption from the other provisions of the Fair Housing Act for certain single-family houses sold or rented by an owner which fulfill specific criteria. They assert that this exemption demonstrates Congress's intent the FHAA prohibitions only apply to those who are in the business of providing housing.

Neither the statutory language, legislative history, nor cases in other jurisdictions suggest that Congress intended such a narrow construction of the statute and its amendments. The FHAA "is a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." *Helen L. v. DiDario*, 46 F.3d 325 (3d Cir.1995) (quoting H.Rep. No. 711, 100th Cong., 2d Sess. 18 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2179 (footnote omitted)).

When interpreting analogous statutory language prohibiting discrimination based on race or gender, courts have broadly held that the activities of neighbors, management companies, realtors, and financiers which go beyond the initial purchase or rental of a dwelling are prohibited by the Fair Housing Act. For example, allegations against a neighbor who interferes with the initial sale or rental of a property have been held sufficient to make out a claim under the Fair Housing Act. *See Sofarelli v. Pinellas County*, 931 F.2d 718 (11th Cir.1991) (plaintiff, who purchased land and intended to rent a home to minorities, had a claim against his neighbors for their violent and intimidating actions in preventing him from moving his home onto the property which he had purchased). *See also Hogar Agua y Vida en el Desierto v. Suárez*, 829 F.Supp. 19, 1993 (D.P.R.1993), *vacated, remanded, sub nom.*, 36 F.3d 177 (1st Cir.1994) (plaintiff's claims against defendants whose actions intimidated the owner of a neighboring property to refuse to sell to an organization providing housing to individuals suffering from AIDS, were seemingly within the scope of the protections of the FHAA).

In addition, allegations that the management of an apartment complex had intentionally allowed the quality of services to decline after the tenants had already begun renting an apartment were sufficient to state a claim under FHA. *See Concerned Tenants Assn. of Indian Trails Apartments v. Indian Trails Apartments*, 496 F.Supp. 522 (N.D.Ill. 1980) (plaintiffs, black tenants, stated a claim against the management of their apartment complex alleging that the quality of the services provided had deteriorated substantially since the time when the racial composition of the complex was primarily white).

■■■ Finally, there is a cause of action against neighbors who interfere with the continuing right to use and enjoy the rented or purchased property. *See Evans v. Tubbe*, 657 F.2d 661 (5th Cir.1981) (plaintiff, black owner of land, alleged sufficient facts to state a claim against her white neighbor who owned a private road providing access to plaintiff's property. Defendant built a gate blocking plaintiff's access to the private road and provided a key to all of plaintiff's white neighbors, but not to plaintiff). *See also Seaphus v. Lilly*, 691 F.Supp. 127 (N.D.Ill. 1988) (plaintiff had alleged facts sufficient to state a claim against owners of neighboring condominium units for interfering with his continued right to enjoy his dwelling free from discrimination by changing the locks to the garage and common doors without providing plaintiff a key, slashing the tires on his cars, and barricading his access to his apartment).

Members of the condominium board of directors are elected by the owners of units in the building to communally represent the interest of all the owners. They are responsible for collecting condominium dues or

maintenance fees, and administering that money to maintain the common areas in the building. Other duties of the board include the enforcement of condominium regulations for the benefit of all the owners in the building. Because of their duties and responsibilities, members of the board have the ability to exert indirect control over individual owners in the use of the common areas. Therefore, although defendants were not decedent's direct housing provider, they were in a position to deny or make unavailable a portion of the building to plaintiff, or to discriminate against plaintiff in the provision of housing services or facilities.

■ Plaintiffs further allege that defendants violated Section 3617 of the FHAA, which prohibits a third party from interfering with individual's free exercise of his or her housing rights:

> "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, . . ., any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

By bringing groundless civil claims against decedent and threatening to bring criminal actions, defendants' actions could arguably have intimidated decedent in such a way that she refrained from exercising her right to use the lobby and other common areas of the Condominium whenever she wished. Although defendants did not force decedent to move out of the Condominium, their actions allegedly forced her out of a portion of the physical space which she was entitled to use. By denying plaintiff the right to use the common areas whenever she wished, defendants allegedly discriminated in the provision of facilities, since other condominium owners were allowed to use the common areas whenever they so desired.

In light of the analysis presented, plaintiffs' allegations that defendants entered decedent's dwelling without her permission, brought groundless civil claims against decedent, and threatened to bring groundless criminal charges against her in an attempt to prevent her from using the communal areas of the condominium complex are sufficient to state a claim under the FHAA.

## III. STANDING

■ Under the FHAA any aggrieved person may bring a civil suit to enforce the provisions of this title for actual and punitive damages. 42 U.S.C. § 3613(a)(1)(A) and § 3613(c)(1). The Act defines the term "aggrieved person" to include "any person who . . . claims to have been injured by a discriminatory housing practice" 42 U.S.C. § 3602(i). The heirs of Rosa Amalia Maeso Schroeder claim that she was injured by defendants' discriminatory housing practices of threatening to bring groundless criminal and civil actions against decedent, and preventing her from using the common areas of the Condominium. Since Ms. Maseo Schroeder has died, her brothers and sisters have brought Ms. Maeso Schroeder's claims against defendants in their capacity as her legal representative.

There is no specific provision in the Fair Housing Act or its amendments which defines whether an individual's right to bring a civil claim is inherited by that person's heirs. Statutory construction of civil rights statutes is governed by 42 U.S.C. § 1988. *Glanz v. Vernick*, 750 F.Supp. 39, 42 (Mass.1990). Section 1988 provides a default rule which establishes that state law governs on issues upon which the federal statute is silent. "When federal law is thus 'deficient,' § 1988 instructs us to turn to the common law, as modified and changed by the constitution and statutes of the [forum] State," as long as not inconsistent with the federal constitution. *Robertson v. Wegmann*, 436 U.S. 584, 588, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978).

Therefore, the issue of whether Ms. Maeso Schroeder's cause of action for a civil rights violation abates upon her death is resolved according to Puerto Rico law. The Civil Code of Puerto Rico does not include a specific survivorship statute, however, the Puerto Rico Supreme Court has determined that any cause of action which is not inherently personal, is capable of being inherited. *Encarnación v. Lebrón*, 855 F.Supp. 528 (D.P.R. 1994) (construing *Vda. De Delgado v. Boston Ins. Co.*, 101 D.P.R. 598, (1973)).

Defendants argue that enforcement of a civil rights statute is inherently personal and that Ms. Maseo Schroeder's right to seek redress for her injury from defendants' allegedly discriminatory housing practices abated at her death. Their argument, however, is flawed, "because a man never dies with respect to his civil rights and obligations[,] which are not personal[,] but are transmitted to his heirs." *Manuel de Río-Torres, et al. v. Heirs of Rafael A. Cancel, et al.* 36 P.R.R. 468, 470–71 (1927). After an individual dies, the heirs, administrator or representative of the decedent's estate may bring the decedent's civil rights cause of action. *See Arroyo v. Plá,* 748 F.Supp. 56, 57 n. 1 (D.P.R.1990). Consequently, plaintiffs have standing to sue as Ms. Maseo Schroeder's legal representatives for the damages suffered by decedent before her death.

Once original jurisdiction has been established under a federal question, a federal district court may exercise jurisdiction over related state claims pursuant to supplemental jurisdiction. 28 U.S.C. § 1367(a). The relevant statute reads in pertinent part:

> [T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Whether Commonwealth claims are so related to federal claims depends upon the existence of a common nucleus of operative facts. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Plaintiffs seek damages for their own personal pain and suffering flowing from Rosa Amalia Maseo Schroeder's death. *Vda. De Delgado v. Boston Ins. Co.,* 101 D.P.R. 598 (1973) (relatives of decedent have their own cause of action for damages caused by decedent's death). *Hernández v. Fournier,* 80 D.P.R. 93, 96 (1957) (close heirs have a claim of their own personal damages which result from the decedent's death). They argue that but for defendants' discriminatory conduct, decedent would not have committed suicide. Whether or not plaintiffs are able to support these allegations will depend on the same facts which sustain plaintiffs' federal claims. Therefore, this Court will exercise supplemental jurisdiction over plaintiffs' claims pursuant to Commonwealth law as well.

## IV. CONCLUSION

Plaintiffs' claims that defendants engaged in coercive activity to prevent decedent from using the communal areas of the condominium complex are sufficient to state a claim upon which relief can be granted pursuant to the Fair Housing Amendments Act. Furthermore, the Court will exercise supplemental jurisdiction over plaintiffs' claims under Puerto Rico law. Therefore, co-defendants' motions to dismiss are hereby **DENIED.**

IT IS SO ORDERED.