**Magda Socia LEBRON, Plaintiff,**

v.

**ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL, et al., Defendants.**

**Civil No. 96–2324(SEC).**

United States District Court, D. Puerto Rico.

March 4, 1998.

Alberto Santiago–Villalonga, Nachman, Guillmard & Rebollo, Santurce, PR, for Plaintiff.

Rafael Fuster–Martínez, Ponce, PR, Pedro J. Córdova–Pelegrina; San Juan, PR, Ernesto F. Rodríguez–Suris, Hato Rey, PR, José E. Otero–Matos, Irizarry, Otero & López, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendant Dr. Carlos Alvarez Ruiz's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) **(Docket # 43)**, filed on August 29, 1997. In said motion, Dr. Alvarez requests that plaintiff's Emergency Medical Treatment and Active Labor Act ("EMTALA") claims against him be dismissed for failure to state a claim for which relief can be granted because EMTALA does not create a personal cause of action against individual physicians, only against participating hospitals. Also pending is Dr. Alvarez's December 4, 1997 Request for Judgment **(Docket # 50)**, in which he advised the Court that plaintiff had failed to oppose the motion and reiterated his earlier motion to dismiss. Plaintiff failed to oppose either motion; we thus decide them as unopposed. For the reasons stated below in this Opinion and Order, defendant Dr. Carlos Alvarez Ruiz's motions requesting dismissal of the complaint pursuant to Rule 12(b)(6) **(Dockets # 43, 50)** are **GRANTED** and plaintiff's EMTALA claims against defendant Dr. Alvarez are **DISMISSED.**

### Factual Background

On October 31, 1994, plaintiff Magda Socia Lebrón suffered a rear-end collision while driving her car, which prompted her to seek emergency medical attention. Plaintiff went to the Emergency room at Ashford Presbyterian Community Hospital ("Ashford") complaining of pain in her left hand and her neck. She consented to medical treatment. Plaintiff was evaluated by Dr. Carlos Alvarez Ruiz and Dr. Carlos Benitez Colon. The latter diagnosed her condition as a neck fracture and placed her on a soft neck brace. That same day, she was transferred to the Emergency Department of the Puerto Rico Medical Center, where she was allegedly told that she did not have a fracture nor serious condition in the neck area and could take off her neck brace. She was discharged at 10:40 p.m. from the Medical Center, in an allegedly stable condition.

The next day plaintiff was forced to seek further medical attention through the Automobile Accident Compensation Administration (ACAA) and on November 11, 1994, underwent an emergency surgical procedure to stabilize her spine. Afterwards she underwent another surgical procedure and required intensive rehabilitation therapy for about 3 months. She is suing Ashford and Drs. Alvarez and Benitez pursuant to EMTALA, 42 U.S.C. §§ 1395dd, as well as pursuing supplemental law claims against them under Puerto Rico law, for their alleged fail-

ure to adequately screen, treat, and transfer her.

**Motion to Dismiss Standard**

In *Iacampo v. Hasbro, Inc.*, 929 F.Supp. 562 (D.R.I.1996), a federal district court cogently held that, "[l]ike a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." *Id.* at 567. *See also Guckenberger v. Boston University*, 957 F.Supp. 306, 313 (D.Mass.1997).

■ In fact, Rule 12(b)(6) motions such as this one have no purpose other than to "test the formal sufficiency of the statement of the claim for relief ... [They are not, however,] a procedure for resolving a contest about the facts or the merits of the case." 5A Wright & Miller, *Federal Practice & Procedure, supra* § 1356, at 294 (2d ed.1990). Only where the complaint fails to comply with the liberal standard provided in Rule 8(a), that is, to provide a "short and plain statement ... showing that the pleader is entitled to relief," will it be subject to dismissal under 12(b)(6). Fed.R.Civ.P. 8(a). *See also Federal Practice and Procedure, supra* at 296; *Podell v. Citicorp Diners Club, Inc.*, 859 F.Supp. 701 (S.D.N.Y.1994). It is the moving party which has the burden of proving that no claim exists. *Federal Practice and Procedure, supra* at 115 (1996 Supp.). *See also Clapp v. LeBoeuf, Lamb, Leiby & MacRae*, 862 F.Supp. 1050 (S.D.N.Y.1994).

In determining whether to grant a motion to dismiss, courts must construe the complaint "in the light most favorable to plaintiff" and treat her allegations as though they were true. *Federal Practice and Procedure, supra* at 304. *See also Rockwell v. Cape Cod Hosp.*, 26 F.3d 254 (1st Cir.1994). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir.1994); *Schroeder v. De Bertolo*, 879 F.Supp. 173, 175 (D.Puerto Rico, 1995).

■ Courts are not, however, required to "accept every allegation made by the complainant no matter how conclusory or gener-

alized." *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir.1992). As the First Circuit has held. "[t]he pleading requirement, however, is 'not entirely a toothless tiger.'" *Doyle v. Hasbro*, 103 F.3d 186, 190 (1st Cir.1996), *quoting The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). This Court need not accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996).

**Applicable Law—EMTALA**

It is undisputed that Congress enacted the Emergency Medical Treatment and Active Labor Act ("EMTALA")—or the Anti-Dumping Act, as it is otherwise commonly known—with a clear and specific purpose in mind: to allay concerns "about the increasing number of reports that hospital emergency rooms [were] refusing to accept or treat patients with emergency conditions if the patient [did] not have medical insurance." *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1189 (1st Cir.1995), *citing* H.R.Rep. No. 241(I), 99th Cong., 1st Sess. 27 (1986), reprinted in 1986 U.S.C.C.A.N. 42, 605. *See also, generally*, Barry R. Furrow, *An Overview and Analysis of the Impact of the Emergency Medical Treatment and Active Labor Act*, 16 J. Legal Med. 325 (Sept.1995); Diane S. Mackey, *The Emergency Medical Treatment and Active Labor Act: An Act Undergoing Judicial Development*, 19 U. Ark. Little Rock L.J. 465 (May 1997).

The Act itself did not limit its coverage to persons without economic resources for emergency care. Mackey, *supra* at 466. *See also* Alicia K. Dowdy, et al., *The Anatomy of EMTALA: A Litigator's Guide*, 27 St. Mary's L.J. 463, 465 (1996). But neither did it "provide a private cause of action against the hospital and physician for misdiagnosis or improper treatment, areas traditionally governed by state malpractice law." Furrow, *supra* at 326. *See also Correa*, 69 F.3d at 1192; *Vickers v. Nash General Hospital*, 78 F.3d 139, 142 (4th Cir.1996); *Baber v. Hospital Corp. of America*, 977 F.2d 872, 879 (4th Cir.1992).

■ It is clear that EMTALA provides a cause of action for injured patients against a

participating hospital.[1] While the First Circuit Court of Appeals has not decided the issue whether EMTALA provides a cause of action against individual physicians, all circuits that have done so have found that it does not. *See Eberhardt v. City of Los Angeles,* 62 F.3d 1253 (9th Cir.1995); *King v. Ahrens,* 16 F.3d 265 (8th Cir.1994); *Delaney v. Cade,* 986 F.2d 387 (10th Cir.1993); *Baber, supra; Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037 (D.C.Cir.1991).

Studying the plain language of the statute, we find that Congress did not include physicians within the scope of liable parties under EMTALA; had it chosen to make physicians liable it would have listed them along with the participating hospitals in § 1395dd(d)(2)(A). "The plain language indicates that §§ 1395dd(d)(2)(A) creates a cause of action only against a 'participating hospital.' The statutory definition of 'participating hospital' does not encompass an individual physician." *Ahrens,* 16 F.3d at 270. *See also Delaney,* 986 F.2d at 394 ("We agree the plain language of the Act indicates individuals can bring civil actions only against participating hospitals"); *Eberhardt,* 62 F.3d at 1256 ("The plain text of the EMTALA explicitly limits a private right of action to the participating hospital.")

In addition, all circuits that have analyzed EMTALA's legislative history have found that it is in clear accordance with the plain language of the statute. "The statute's legislative history makes it clear that, far from intending to allow patients to sue doctors, Congress intentionally limited patients to suits against hospitals." *Baber,* 977 F.2d at 877. *See also Eberhardt,* 62 F.3d at 1256; *Kaufman v. Cserny,* 856 F.Supp. 1307, 1311 (S.D.Ill.1994) ("Based upon a review of the caselaw on this issue and this Court's own review of the statute and the legislative history, this Court concludes that EMTALA does not provide a private right of action by an individual against a physician.")

**Conclusion**

Pursuant to the foregoing discussion, we find that both the plain language and the legislative history of EMTALA clearly indicate that the statute does not provide an individual cause of action against physicians. Accordingly, defendant Dr. Carlos Alvarez Ruiz's motions requesting dismissal of plaintiff's EMTALA claims against him pursuant to Rule 12(b)(6) **(Dockets # 43, 50)** are **GRANTED** and plaintiff's EMTALA claims against Dr. Alvarez are **DISMISSED.** Partial judgment will be entered accordingly.

**SO ORDERED.**

---

1. The section of the statute that provides a cause of action for injured patients states as follows: Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate. 42 U.S.C. § 1395dd(d)(2)(A). The statute defines "participating hospital" as one "that has entered into a provider agreement under section 1395cc of this title." 42 U.S.C. § 1395dd(e)(2).