**UNITED STATES of America, Plaintiff,**

v.

**$40,000.00 IN U.S. CURRENCY,
Defendant.**

**Civil No. 97–1911(SEC).**

United States District Court,
D. Puerto Rico.

March 11, 1998.

Isabel Muñoz–Acosta, Asst. U.S. Atty., Hato Rey, PR, for Plaintiff.

José O. Vázquez–Garcia, Lausell, Carlo & Goble, San Juan, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is claimant Carlos Maldonado's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (**Docket # 5**), filed on July 16, 1997. The Government opposed claimant's Motion to Dismiss on July 29, 1997 (**Docket # 7**). On August 7, 1997 claimant filed a motion requesting leave to reply to the Government's opposition (**Docket # 9**) which is hereby **GRANTED**. After requesting a motion for extension of time (**Docket # 11**) to file his response, which is now **MOOT**, claimant filed his reply to the Government's opposition on September 12, 1997 (**Docket # 14**). For the reasons stated below in this Opinion and Order, claimant Carlos Maldonado's Motion to Dismiss (**Docket # 2**) is **GRANTED** and the above-captioned action is **DISMISSED** for failure to state a claim for which relief can be granted.

### Factual Background

We take the relevant facts to be analyzed as they are stated in the verified complaint. (**Docket # 1**). According to the allegations in the complaint, claimant Carlos Maldonado arrived at Luis Muñoz Marín International Airport in Isla Verde, Puerto Rico at approximately 11:45 a.m. on October 13, 1996. When he passed his carry-on luggage through the X-ray conveyor belt machine at the security checkpoint, a private security officer observed what appeared to be numerous bundles of U.S. currency. He questioned claimant, who admitted to be carrying currency. The security officer then notified a uniformed police officer, who in turn notified an agent with the Puerto Rico Police Department assigned to the Drug Enforcement Administration Task Force, Agent Irizarry.

Agent Irizarry approached claimant at the security checkpoint, identified himself as a police officer, and asked to speak to claimant, advising him that he was not under arrest and in fact was free to leave. Claimant consented to speak to Agent Irizarry, and produced his airline ticket and identification, both under claimant's correct name. The ticket proffered by claimant showed a one-way ticket to Fort Lauderdale, Florida, paid in cash.

Claimant informed Agent Irizarry that he had traveled to Colombia, South America from Puerto Rico in order to sell some gold, and that he was carrying $40,000 in cash. He also informed him that he was on his way from San Juan to Fort Lauderdale en route to Miami. According to the allegations in the complaint, claimant "did not know how much gold he had sold, to whom he had sold it nor could he show any receipts for sales or a business card that would indicate that he was a legitimate business man."

Claimant then consented to accompany some agents to the narcotics group office at the airport. Upon his arrival there, claimant was once again asked about the origin of the money, to which he restated that he had several gold customers on the Island that had purchased from him in cash. He failed to produce any telephone numbers for these customers.

Subsequently, another officer responded to the narcotics group office with a narcotic detection canine named "Toto". The canine indicated a positive alert that the scent of a controlled substance was present. Pursuant

to that, Agent Irizarry advised claimant that the money was being seized pursuant to 21 U.S.C. § 881(a)(6). The money was counted and bagged and a receipt was given to Mr. Maldonado, who then left the narcotics group office. In response to the verified complaint filed by the government, Mr. Carlos Maldonado filed a claim (**Docket # 4**) and then filed the instant motion to dismiss (**Docket # 5**).

**Motion to Dismiss Standard**

In *Iacampo v. Hasbro, Inc.*, 929 F.Supp. 562 (D.R.I.1996), a federal district court cogently held that, "[l]ike a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." *Id.* at 567. *See also Guckenberger v. Boston University*, 957 F.Supp. 306, 313 (D.Mass.1997).

In fact, Rule 12(b)(6) motions such as this one have no purpose other than to "test the formal sufficiency of the statement of the claim for relief ... [They are not, however,] a procedure for resolving a contest about the facts or the merits of the case." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure, supra* § 1356, at 294 (2d ed.1990). Only where the complaint fails to comply with the liberal standard provided in Rule 8(a), that is, to provide a "short and plain statement ... showing that the pleader is entitled to relief," will it be subject to dismissal under 12(b)(6). Fed.R.Civ.P. 8(a). *See also Federal Practice and Procedure, supra* at 296; *Podell v. Citicorp Diners Club, Inc.*, 859 F.Supp. 701 (S.D.N.Y.1994). It is the moving party which has the burden of proving that no claim exists. *Federal Practice and Procedure, supra* at 115 (1996 Supp.). *See also Clapp v. LeBoeuf, Lamb, Leiby & MacRae*, 862 F.Supp. 1050 (S.D.N.Y.1994).

In determining whether to grant a motion to dismiss, courts must construe the complaint "in the light most favorable to plaintiff" and treat her allegations as though they were true. *Federal Practice and Procedure, supra* at 304. *See also Rockwell v. Cape Cod Hosp.*, 26 F.3d 254 (1st Cir.1994). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir.1994); *Schroeder v. De Bertolo*, 879 F.Supp. 173, 175 (D.Puerto Rico, 1995).

Courts are not, however, required to "accept every allegation made by the complainant no matter how conclusory or generalized." *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir.1992). As the First Circuit has held, "[t]he pleading requirement, however, is 'not entirely a toothless tiger.'" *Doyle v. Hasbro*, 103 F.3d 186, 190 (1st Cir.1996), *quoting The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). This Court need not accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996).

**Applicable Law—The Civil Forfeiture Statute**

 The Government seeks to forfeit the defendant currency pursuant to 21 U.S.C. § 881(a)(6) which provides that property constituting proceeds traceable to the illegal exchange of controlled substances is subject to forfeiture to the United States.[1] As directed by Section 881(d), in such a forfeiture action the allocation of each party's burdens is determined by 19 U.S.C. § 1615. Section 1615 provides that the government must show at the outset that it has probable cause to institute forfeiture proceedings. *United States v. One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1052 (1st Cir.1997). In particular, the Government must show that it has probable cause to believe "that the property had the

---

1. 21 U.S.C. § 881 provides in pertinent part:
 (a) The following shall be subject to forfeiture to the United States and no property shall exist in them:
 . . .
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter ...

requisite nexus to a specified illegal purpose." *United States v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30, 32 (1st Cir. 1991). "When the government seeks to forfeit money, the nexus can be shown by demonstrating probable cause to believe either that the money represented the proceeds of a drug sale, or that it was intended to be used in the purchase of drugs." *United States v. One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1053 (1st Cir.1997). However, the Government does not have to link the money to any *particular* drug transaction. *Id. See also United States v. 255 Broadway*, 9 F.3d 1000, 1004 (1st Cir.1993). Once the Government has provided the nexus between the money and an illegal drug transaction, the burden then shifts to claimant to show by a preponderance of the evidence that the property is not subject to forfeiture. *See, e.g., 255 Broadway*, 9 F.3d at 1004.

The First Circuit Court of Appeals has defined "probable cause" as "a reasonable ground for belief of guilt; supported by less than prima facie proof but more than mere suspicion." *United States v. Parcels of Land*, 903 F.2d 36, 38 (1st Cir.1990), *quoting United States v. $250,000 in U.S. Currency*, 808 F.2d 895, 897 (1st Cir.1987). "Because there are so many variables in the probable cause equation, probable cause findings are not invariably bound by precedent." *255 Broadway*, 9 F.3d at 1004, *quoting United States v. Maguire*, 918 F.2d 254, 258 (1st Cir.1990), *cert. denied*, 499 U.S. 950, 111 S.Ct. 1421, 113 L.Ed.2d 474 (1991). In *$36,-634*, 103 F.3d at 1054, the First Circuit stated that "[t]he government aptly likens probable cause to a wall, each of whose bricks represents a piece of evidence in the overall probable cause equation." Therefore, each piece of evidence must be evaluated to determine whether it is probative, *see 255 Broadway*, 9 F.3d at 1004, and the "aggregate of facts" must be examined to determine whether probable cause exists. *$36,634*, 103 F.3d at 1054, *citing $250,000*, 808 F.2d at 899.

In light of the above-cited caselaw, we shall evaluate the allegations in the verified complaint in order to determine whether the Government has met its burden of establishing probable cause.

**Analysis—Whether the Government has established probable cause**

We shall begin by summarizing the Government's allegations regarding claimant that seek to establish probable cause to forfeit the defendant currency. We shall then evaluate each allegation on its own to determine its probative value, and then proceed to examine the "aggregate of the facts" to determine whether the Government has established probable cause.

First, claimant Carlos Maldonado was carrying $40,000 in cash. The First Circuit has found that "[c]arrying a large sum of cash is 'strong evidence' of [a connection to illegal drug activity] even without the presence of drugs or drug paraphernalia." *$36,634*, 103 F.3d at 1055, *quoting United States v. $215,-300*, 882 F.2d 417, 419 (9th Cir.1989). Therefore, the fact that claimant was carrying a large amount of cash in his person is a probative fact. That said, however, the First Circuit has not established "a rebuttable presumption that the possession of large amounts of cash is per se evidence of illegal activity." *Id.* at 1055, fn. 9, *distinguishing United States v. $37,780*, 920 F.2d 159, 162 (2d Cir.1990). Furthermore, we find it probative that claimant made no attempt to conceal the currency in his person; rather, the currency was in claimant's carry-on luggage which he sent through the x-ray machine at the security checkpoint at the airport. He also informed Agent Irizarry of the quantity of cash that he was carrying and made no attempt to lie to the officer regarding the amount of money that he was carrying.

Second, the Government alleges that claimant had traveled from Puerto Rico to Colombia and was traveling at that moment from Puerto Rico to Fort Lauderdale, Florida. The Government alleges that claimant's travel destinations are relevant because they are "well-known centers of illegal drug trafficking activity." (**See Docket # 7, page 5**). The fact that claimant may have been traveling to and from what are known as "source cities" is of little importance and is of extremely limited probative value. *Id., quoting United States v. Glover*, 957 F.2d 1004, 1017 (2d Cir.1992) (Oakes, C.J., dissenting) ("As cases too numerous to mention have pointed

out, 'source cities.' as testified to by law enforcement officers, include virtually every city in the United States of any size ... 'Source city' is essentially a meaningless term."). Therefore, the fact that claimant was traveling from Colombia and then to Fort Lauderdale has extremely limited probative value and adds very little to the probable cause equation.

. Also of extremely limited probative value is the fact that claimant bought a one-way ticket to Fort Lauderdale in cash. As the First Circuit has also found, claimant's "cash purchase of the ticket... has limited probative value." *$36,634*, 103 F.3d at 1055, fn. 9. Thus, this fact also adds very little to the probable cause equation and does not aid the Government very much in meeting its probable cause burden. This is so particularly because claimant purchased the ticket in his own name, which largely counteracts the anonymity provided by the cash purchase of an airplane ticket. Claimant was traveling under his own name, rather than an alias, and produced identification that confirmed his identity.

The Government claims that the fact that claimant alleged that he was in the business of selling gold but could not provide any evidence of his alleged clients is strong evidence that he was involved in drug trafficking. While the Government is correct in its assertion that claimant's lack of documentation for the source of the money is probative, *see $36,634*, 103 F.3d at 1055, it cannot be said, as was the case in *$36,634*, that claimant's explanation for the source of the money was "evasive" and "confused" so as to "serve[] only to further arouse[] ... suspicion []." *Id., quoting $37,780*, 920 F.2d at 163. Claimant was consistent in his explanation for the source of the money and there were no allegations that he somehow changed his story upon questioning by the agent. Thus, we find that claimant's failure to properly document the source of the money is suspicious and will add to the Court's analysis of the existence of probable cause. However, it cannot be said to be a determinative factor. It may be an indication that claimant is somehow linked to illicit activity; that the currency can somehow be linked to drugs

based on the amount of money and claimant's failure to explain the source of the money to the Government's satisfaction is an entirely different proposition. It is relevant to note here that there are no allegations in the complaint that claimant was unusually nervous so as to arouse the suspicion of airport personnel, or as stated above, that he gave implausible or contradictory stories regarding the source of the money. The lack of such evidence weighs against a finding of probable cause in this case.

Finally, the Government alleges that the fact that there was a positive dog sniff on the currency is probative that the money can be linked to a drug transaction. Most courts that have analyzed this issue have come to the conclusion that a positive canine alert has virtually no probative value in light of the widespread contamination of U.S. currency. *See, e.g., United States v. $49,576.00 in U.S. Currency*, 116 F.3d 425, 427 (9th Cir.1997); *United States v. $5,000 in U.S. Currency and $9,750.00 in U.S. Currency*, 40 F.3d 846, 848 (6th Cir.1994); *United States v. $80,760.00 in U.S. Currency*, 781 F.Supp. 462, 475–76 (N.D.Texas 1991) ("[T]he Court seriously questions the value of a dog's alert without other persuasive evidence...."). As the First Circuit stated in *$36,634*, 103 F.3d at 1055–56, "the dog's reaction, indicating that [claimant's] money had at some point come into contact with narcotics, weighs some, but not a great deal on the scale." It does retain some probative value, but it alone is insufficient to establish probable cause for forfeiture.

The District Court for the Northern District of Texas, in an exhaustive review of the applicable caselaw in forfeiture actions, divided drug-related forfeitures, such as the instant one, into three categories: "(1) close proximity cases where officers find the property with illegal drugs or determine through investigation that it is very closely related to illegal drug dealing; (2) cases relying on less persuasive evidence that is sufficient under the totality of the circumstances; and (3) cases improperly relying on mere suspicion." *United States v. $80,760.00 in U.S. Currency*, 781 F.Supp. 462, 472–73 (N.D.Texas 1991).

It appears to the Court that the Government has done little more than prove that claimant may fit the profile of a drug courier insofar as his travel destinations, his luggage, and his cash purchase of the plane ticket are concerned. Such evidence is not very persuasive and does little to help the Government meet its probable cause burden. As the Supreme Court stated in *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890, such profile characteristics "describe a large category of presumably innocent travelers, who would be subject to virtually random seizures were the court to conclude that as little foundation as [the profile characteristics] could justify a seizure." In addition, while the positive dog sniff may indicate that it is more likely than not that such currency was sometime used in a drug transaction, in light of the widespread contamination of the currency, it, combined solely with the drug courier profile evidence presented by the Government is insufficient to establish probable cause for forfeiture. We thus find that the instant case falls squarely within the third category of cases established by the district court in *$80,-760.00*, those cases improperly relying on mere suspicion.

Contrary to the evidence presented by the Government in *$36,634*, which in our opinion would fall into the second category of cases, there are absolutely no allegations in this complaint that claimant can be linked, directly or indirectly, with any drug trafficking organization. The evidence in *$36,634* indicated that claimant had direct links as an associate of two known drug dealers, one of whom claimant had bailed out with $10,000 in cash after he was arrested for dealing marijuana. The present case can be clearly distinguished from *$36,634* because there is not a single allegation that claimant has been linked to drug trafficking, currently or in the past, directly or indirectly. The nexus between defendant currency and any drug transaction has not been properly pleaded in this complaint; there is not a single allegation that claimant can somehow be linked, however tenuously, with any drug trafficking organization or any drug transaction.

A mere courier profile, combined with a positive drug sniff, is insufficient to provide probable cause in absence of any probative evidence linking the claimant to drugs. There are insufficient allegations to prove one of the essential elements of the forfeiture provision, that there be a nexus between the property to be forfeited and a drug transaction or organization. "While the Government need not trace the money to a particular drug transaction, it must at least establish a substantial connection to a particular alleged narcotics trafficker or traffickers." *United States v. $59,074.00 in U.S. Currency*, 959 F.Supp. 243, 249 (D.N.J.1997). Were we to find otherwise, the property of virtually any person traveling with a substantial amount of cash would be subject to forfeiture, and the per se rule rejected previously by the First Circuit would become the norm. As the First Circuit held in *United States v. One Parcel of Real Property*, 964 F.2d 1244, 1248 (1st Cir.1992), "[S]ince forfeitures are strong medicine, disfavored in our jurisprudence, it seems fitting to condition the medicine's availability on a proper regard for the requirements of the law." Furthermore, we agree with the Supreme Court in that "[t]his court ... is not empowered to suspend constitutional guarantees so that the government may more effectively wage a 'war on drugs.' If the war is to be fought, those who fight it must respect the right of individuals, whether or not those individuals are suspected of having committed a crime." *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

**Conclusion**

In light of the above discussion, we find that the Government has failed to plead sufficient facts in the verified complaint to establish a nexus between the defendant currency and any drug transaction or organization. Even taken in the light most favorable to the Government, there is simply insufficient evidence to establish more than a mere suspicion that claimant is involved with drugs, and that thus defendant property is subject to forfeiture. Pursuant to the above, the Court hereby **DISMISSES** the above-captioned ac-

tion under Fed.R.Civ.P. 12(b)(6). Judgment will be entered accordingly.

**SO ORDERED.**